**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

**JOSE ALFREDO AMAYA**
2604 Northshire Dr.
Baltimore, MD  21230

**LUIS MIRANDA**
1218 North Caroline St.
Baltimore, MD 21213

**MOISES ALEMAN**
1631 North Milton St.
Baltimore, MD 21213


       **Plaintiffs,**

**v.**

**INFINITE HOMES GROUP 646/500 LLC**
4903 Belair Road, Suite 101
Baltimore, MD 21206

    <u>Serve on</u>:
    Steven Ryback, Resident Agent
    400 Redland Court, Suite 212
    Owings Mills, MD 21117

**INFINITE HOMES GROUP 218 LLC**
2 Wisconsin Cir., #700
Chevy Chase, MD 20815

    <u>Serve on</u>:
    Corporate Creations Network Inc.,
    Resident Agent
    2 Wisconsin Cir., #700
    Chevy Chase, MD 20815

**INFINITE HOMES GROUP 4108 LLC**
2833 Smith Ave, #409
Baltimore, MD 21209

    <u>Serve on</u>:
    Steven Ryback, Resident Agent

400 Redland Court, Suite 212
Owings Mills, MD 21117

**INFINITE HOMES GROUP 21AC LLC**
4903 Belair Road, Suite 101
Baltimore, MD 21206

> **Serve on**:
> Rocket Corporate Services Inc.,
> Resident Agent
> 245 West Chase Street
> Baltimore, MD 21201

**INFINITE HOMES GROUP 8N LLC**
4903 Belair Road, Suite 101
Baltimore, MD 21206

> **Serve on**:
> Rocket Corporate Services Inc.,
> Resident Agent
> 245 West Chase Street
> Baltimore, MD 21201

**INFINITE HOMES GROUP 21AA LLC**
4903 Belair Road, Suite 101
Baltimore, MD 21206

> **Serve on**:
> Rocket Corporate Services Inc.,
> Resident Agent
> 245 West Chase Street
> Baltimore, MD 21201

**INFINITE HOMES GROUP 21AD LLC**
4903 Belair Road, Suite 101
Baltimore, MD 21206

> **Serve on**:
> Rocket Corporate Services Inc.,
> Resident Agent
> 245 West Chase Street
> Baltimore, MD 21201

**INFINITE HOMES GROUP 21AE LLC**
4903 Belair Road, Suite 101
Baltimore, MD 21206

<u>**Serve on**</u>:
Rocket Corporate Services Inc.,
Resident Agent
245 West Chase Street
Baltimore, MD 21201

**INFINITE HOMES GROUP 21AHI LLC**
4903 Belair Road, Suite 101
Baltimore, MD 21206

   <u>**Serve on**</u>:
   Rocket Corporate Services Inc.,
   Resident Agent
   245 West Chase Street
   Baltimore, MD 21201

**INFINITE HOMES GROUP 2601 LLC**
4903 Belair Road, Suite 101A
Baltimore, MD 21206

   <u>**Serve on**</u>:
   Rocket Corporate Services Inc.,
   Resident Agent
   245 West Chase Street
   Baltimore, MD 21201

**INFINITE HOMES GROUP 3629 LLC**
4903 Belair Road, Suite 101
Baltimore, MD 21206

   <u>**Serve on**</u>:
   Rocket Corporate Services Inc.,
   Resident Agent
   245 West Chase Street
   Baltimore, MD 21201

**GREILYN CONSTRUCTION LLC**
4909 Orville Ave
Baltimore, MD 21205

   <u>**Serve on**</u>:
   Miriam Vasquez, Resident Agent
   4909 Orville Ave
   Baltimore, MD 21205

**E.S. HOMES, LLC**
7851 Birmingham Ave
Parkville, MD 21234

   <u>Serve on</u>:
   Eron Heath, Resident Agent
   7851 Birmingham Ave
   Parkville, MD 21234

**SHAY MOKAI**
1849 E. 13th St.
Brooklyn, NY 11229

   Individually and E.S. Homes

**ALFREDO SANDOVAL**
4909 Orville Ave
Baltimore, MD 21205

   Individually and Greilyn Construction

**ERON HEATH**
7851 Birmingham Ave
Parkville, MD 21234

   Individually and E.S. Homes

   **Defendants.**

---

## <u>COLLECTIVE ACTION COMPLAINT</u>

   Plaintiffs, individually and on behalf of all others similarly situated, by and through undersigned counsel, allege as follows:

### <u>Introduction</u>

   1.    Plaintiffs Jose Alfredo Amaya, Luis Miranda, and Moises Aleman ("Plaintiffs") are three construction workers who were employed to renovate nearly 20 residential Baltimore-area properties all owned by the same man through related shell companies. During their

employment, Plaintiffs did not receive overtime compensation when they worked more than 40 hours per week and, for several weeks, did not receive any compensation at all.

2.    Defendants are Plaintiffs' joint employers, and include (a) corporate entities operating under the trade name "Infinite Homes" that own the properties where Plaintiffs worked, namely Infinite Homes Group 646/500 LLC, Infinite Homes Group 218 LLC, Infinite Homes Group 4108 LLC, Infinite Homes Group 21AC LLC, Infinite Homes Group 8N LLC, Infinite Homes Group 21AA LLC, Infinite Homes Group 21AD LLC, Infinite Homes Group 21AE LLC, Infinite Homes Group 21AHI LLC, Infinite Homes Group 2601 LLC, Infinite Homes Group 3629 LLC, (collectively, "Infinite Homes"); (b) Shay Mokai, who is the principal of and controls all Infinite Homes corporate entities, including with respect to Plaintiffs' employment; (c) Greilyn Construction LLC ("Greilyn"), which Mokai, on behalf of himself and Infinite Homes, contracted to perform renovations on Infinite Homes' properties, and which in turn hired and jointly supervised Plaintiffs; (d) Alfredo Sandoval, who is the principal of and controls Greilyn, including with respect to Plaintiffs' employment; (e) E.S. Homes, LLC ("E.S. Homes"), which Mokai, on behalf of himself and Infinite Homes, contracted to perform renovations on Infinite Homes' properties, and which in turn jointly supervised Plaintiffs; and (f) Eron Heath, who is the principal of and controls E.S. Homes, including with respect to Plaintiffs' employment.[1]

3.    Plaintiffs bring this civil action for damages stemming from Defendants' willful failure to pay Plaintiffs their earned wages, including overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, the Maryland Wage Payment and

---

[1] Infinite Homes, Mokai, Greilyn, Sandoval, E.S. Homes, and Heath are referred to collectively herein as "Defendants."

Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*, and Maryland common law, and Defendants' knowing failure to properly classify Plaintiffs as employees in violation of the Maryland Workplace Fraud Act ("MWFA"), Md. Code Ann., Lab. & Empl. §§ 3-901 *et seq.*

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

5.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and at least some of Defendants are residents of this district.

## Parties

7.      Plaintiff Jose Alfredo Amaya is a Maryland resident.

8.      Plaintiff Luis Miranda is a Maryland resident.

9.      Plaintiff Moises Aleman is a Maryland resident.

10.     As required by the FLSA, 29 U.S.C. § 216(b), each Plaintiff has given his written consent to become a party to this action. True and correct copies of Plaintiffs' FLSA consent forms are attached as Exhibit A.

11.     Defendant Infinite Homes Group 646/500 LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

12.     Defendant Infinite Homes Group 218 LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

13.  Defendant Infinite Homes Group 4108 LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

14.  Defendant Infinite Homes Group 21 AC LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

15.  Defendant Infinite Homes Group 8N LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

16.  Defendant Infinite Homes Group 21AA LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

17.  Defendant Infinite Homes Group 21AD LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

18.  Defendant Infinite Homes Group 21AE LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

19.  Defendant Infinite Homes Group 21AHI LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

20.  Defendant Infinite Homes Group 2601 LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

21.  Defendant Infinite Homes Group 3629 LLC is a Maryland Limited Liability Company with its principal place of business in Baltimore, Maryland.

22.  Infinite Homes operates as a single enterprise under the FLSA. All eleven LLCs engage in related activities, repairing and rehabilitating Baltimore homes, for the common business purpose of resale in the real estate market. All operate under the "Infinite Homes" trade name and are owned by Mokai. At all times relevant to this action, Infinite Homes has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the

meaning of the FLSA and has been Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), Md. Code Ann., Lab. & Empl. § 3-101(c), the MWHL, *id.* § 3-401(b), the MWPCL, *id.* § 3-501(b), and the MWFA, *id.* § 3-901(c). Infinite Homes earned at least $500,000 in annual gross volume of sales made or business done at all times relevant to this Complaint.

23.   Shay Mokai owns and exercises operational control over Infinite Homes. At all times relevant to this Complaint, he had the power to hire and fire employees, including Plaintiffs; determined employees' wage rates, including Plaintiffs'; had the power to issue payment to employees, including Plaintiffs; maintained and controlled Infinite Homes's finances; and supervised Plaintiffs' work. Defendant Mokai was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), Md. Code Ann., Lab. & Empl., § 3-101(c), the MWHL, *id.* at § 3-401(b), the MWPCL, *id.* at § 3-501(b), and the MWFA, *id.* § 3-901(c). Defendant Mokai acted on behalf of himself and as an agent of Infinite Homes in connection with Plaintiffs' employment.

24.   Greilyn is a Maryland Limited Liability Company with its principal place of business in Baltimore City, Maryland. At times relevant to this Complaint, it has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA and has been Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), Md. Code Ann., Lab. & Empl. § 3-101(c), the MWHL, *id.* § 3-401(b), the MWPCL, *id.* § 3-501(b), and and the MWFA, *id.* § 3-901(c). Greilyn earned at least $500,000 in annual gross volume of sales made or business done at all times relevant to this Complaint.

25.   Alfredo Sandoval is a resident of Baltimore City, Maryland. He owns and exercises operational control over Greilyn. At times relevant to this Complaint, he had the power to hire and fire employees, including Plaintiffs; maintained and controlled Greilyn's finances; issued

payment to employees, including Plaintiffs; and supervised Plaintiffs' work. Defendant Sandoval was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), Md. Code Ann., Lab. & Empl., § 3-101(c), the MWHL, *id.* at § 3-401(b), the MWPCL, *id*. at § 3-501(b), and the MWFA, *id*. § 3-901(c).

26.   E.S. Homes is a Maryland Limited Liability Company with its principal office in Baltimore County, Maryland. At times relevant to this Complaint, it has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA and has been Plaintiffs Amaya's and Miranda's employer within the meaning of the FLSA, 29 U.S.C. § 203(g), Md. Code Ann., Lab. & Empl. § 3-101(c), the MWHL, *id.* § 3-401(b), the MWPCL, *id*. § 3-501(b), and the MWFA, *id*. § 3-901(c). E.S. Homes earned at least $500,000 in annual gross volume of sales made or business done at all times relevant to this Complaint.

27.   Eron Heath is a resident of Baltimore County, Maryland. He owns and exercises operational control over E.S. Homes. At times relevant to this Complaint, he had the power to hire and fire employees, including Plaintiffs Miranda and Amaya; maintained and controlled E.S. Homes's finances; issued payment to employees, including Plaintiffs; and supervised Plaintiffs' work. Defendant Heath was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), Md. Code Ann. Lab. & Empl. § 3-101(c), the MWHL, *id.* § 3-401(b), the MWPCL, *id*. § 3-501(b), and the MWFA, *id*. § 3-901(c).

28.   Defendants were Plaintiffs' joint employers within the meaning of the FLSA, the MWHL, the MWPCL, and the MWFA.

**Factual Allegations**

29.   Infinite Homes has, under Defendant Mokai's direction, purchased roughly 250 residential units split among 75 properties in Baltimore, Maryland.

30.   Many of Infinite Homes' Baltimore properties are vacant or otherwise in poor condition.

31.   Under Defendant Mokai's direction, Infinite Homes undertook the repair and rehabilitation of its properties located in Baltimore at 500 Druid Hill Avenue, 502 Druid Hill Avenue, 1604 McHenry Street, 1606 McHenry Street, 1622 McHenry Street, 218 East 22nd Street, 845 North Luzerne Street, 4027 Hilton Road, 1719 Montpelier Street, 1626 Federal Street, 506 East Lynne Street, 1808 McCulloh Street, 8 North Abington Avenue, 2907 Erdman Avenue, 7307 Linden Avenue, 2839 Lake Avenue, 2825 Clifton Avenue, 14 East Madison Street, and 2648 Polk Street, among other addresses.

32.   Infinite Homes contracted with Greilyn to perform construction work on its properties in late 2021 and early 2022.

33.   Sandoval hired Plaintiffs on behalf of Greilyn and Infinite Homes/Mokai to perform the contracted work on the Infinite Homes' properties.

34.   Mokai, on behalf of himself and Infinite Homes, gave Sandoval permission for Plaintiffs to work on Infinite Homes' properties.

35.   Plaintiffs' responsibilities included caulking, painting, removing paint, installing and removing doors and cabinets, repairing gutters and drains, installing drywall, and pouring mortar and concrete.

36.   Mokai, on behalf of himself and Infinite Homes, promised Plaintiff Amaya $1,000 per week for his work.

37.   Sandoval promised Plaintiffs Miranda and Aleman $1,000 per week for their work.

38.   Around mid-May 2022, Infinite Homes reassigned Sandoval and Greilyn and contracted instead with E.S. Homes and Heath to continue the repair and rehabilitation of its properties. Heath represented to Plaintiffs that he "oversee[s] construction for Shay [Mokai]."

39.   Collectively, Plaintiffs worked on at least nineteen Infinite Homes properties in Baltimore City, including those located at the addresses listed at Paragraph 30 of this Complaint.

40.   Plaintiff Amaya worked on Infinite Homes' properties between approximately December 2021 and approximately September 2022.

41.   Plaintiff Amaya generally worked Monday through Friday from approximately 7:45 a.m. or 8:00 a.m. until approximately 5:00 p.m. or 5:30 p.m., with a break of approximately 30 to 40 minutes.

42.   Plaintiff Miranda worked on Infinite Homes' properties between approximately March 2022 and approximately June 2022.

43.   Plaintiff Miranda generally worked Monday through Friday from approximately 7:45 a.m. or 8:00 a.m. until approximately 5:30 p.m. to 7:00 p.m. with a break of approximately 30 to 40 minutes.

44.   Plaintiff Aleman worked on Infinite Homes properties between March and mid-May 2022. He stopped working on Infinite Homes properties at approximately the same time that Greilyn and Sandoval were replaced by E.S. Homes and Heath, as described in paragraph 45 of this Complaint.

45.   Plaintiff Aleman generally worked Monday through Friday, from approximately 7:45 a.m. or 8:00 a.m. until approximately 5:00 p.m. or 5:30 p.m. with a break of approximately 30 to 40 minutes.

46.   Mokai, on behalf of himself and Infinite Homes, supervised Plaintiffs work together with Sandoval until Sandoval was reassigned and replaced by Heath in mid-May 2022.

47.   After Sandoval's reassignment in mid-May 2022, Mokai, on behalf of himself and Infinite Homes, supervised the remaining Plaintiffs' work together with Heath.

48.   For example, on behalf of himself and Infinite Homes, Mokai prepared daily schedules of tasks—such as "paint and caulk hallway window by stairs" or "Bedroom 4 – install closet door"—for Plaintiffs to complete at Infinite Homes' properties. He provided these schedules to Sandoval and Heath, who communicated them to Plaintiffs via telephone or in-person conversations or by text message.

49.   On behalf of himself and Infinite Homes, Mokai also instructed Plaintiffs as to their start, stop, and break times, including at a meeting in or around March 2022.

50.   At times, Sandoval or Heath instructed Plaintiffs concerning prioritization of assigned tasks or adjustments to the schedule. For example, on May 20, 2022, Heath instructed Miranda "Do drywall and drywall only today."

51.   During their respective tenures, Sandoval and Heath communicated with Plaintiffs daily about whether and how Plaintiffs were performing the tasks Mokai assigned.

52.   During their respective tenures, Sandoval and Heath inspected Plaintiffs' work and directed them to re-do any work that did not reflect Mokai's instructions or standards.

53.   During their respective tenures, Sandoval and Heath supplied materials for Plaintiffs' work, including door trip, caulk, screws, drywall sheets, and other materials.

54.   On behalf of himself and Infinite Homes, Mokai sometimes provided instructions to Plaintiffs directly. For example, Mokai once directly instructed Plaintiffs Miranda and Amaya to put caulking around screws in one of Infinite Homes' properties. A different time, Mokai directly

instructed Plaintiff Miranda not to install a vanity in the upstairs of a property because it did not fit properly. On another occasion, Mokai told Plaintiff Aleman that the way he had completed certain framework was "no good" and demonstrated how he should re-do it.

55.   On a daily or near daily basis, Mokai was present at the properties Plaintiffs worked on to ensure, on behalf of himself and Infinite Homes, that the work was going according to his specifications.

56.   Defendants were not completely disassociated from each other with respect to Plaintiffs' work. To the contrary, they shared, allocated responsibility for, and/or codetermined the essential terms and conditions of Plaintiffs' employment.

57.   Sandoval and Greilyn, along with Mokai and Infinite Homes, jointly employed Plaintiff Amaya between December 2021 and mid-May 2022, when Sandoval and Greilyn were reassigned.

58.   Heath and E.S. Homes, along with Mokai and Infinite Homes, jointly employed Plaintiff Amaya from mid-May 2022 until Amaya's departure in September 2022.

59.   Sandoval and Greilyn jointly employed Plaintiff Miranda, with Mokai and Infinite Homes, between March and mid-May 2022, when Sandoval and Greilyn were reassigned.

60.   Heath and E.S. Homes jointly employed Plaintiff Miranda, with Mokai and Infinite Homes, from mid-May 2022 until Miranda's departure in June 2022.

61.   Sandoval and Greilyn jointly employed Plaintiff Aleman, with Infinite Homes and Mokai, throughout Plaintiff Aleman's work on Infinite Homes properties.

62.   Plaintiffs received payment for only a portion of their work. These partial payments came in various forms including checks from Greilyn signed by Sandoval, checks from E.S. Homes signed by Heath, and Zelle transfers from both Sandoval and Heath, which at times were

made through Sandoval's and Heath's respective spouses.

63.   Plaintiffs were not paid in full for their regular and overtime hours working for Defendants.

64.   Although Plaintiffs often worked more than 40 hours per workweek, Plaintiffs did not receive an overtime premium for their overtime hours.

65.   Plaintiffs received no pay at all for several weeks of their work and received only partial payment for some weeks of work.

66.   Plaintiff Miranda complained to Defendants on behalf of himself and the other Plaintiffs about the lack of payment.

67.   For example, Miranda complained repeatedly to Sandoval that some of the paychecks from Greilyn were non-negotiable. Sandoval and Greilyn did not for the most part issue new, negotiable checks or otherwise make payment for the amounts due.

68.   Plaintiff Miranda also advised Defendant Mokai that Sandoval and Greilyn had not paid him for his work. Mokai, on behalf of himself and Infinite Homes, explained that he had already paid Sandoval, and that Miranda should take up the issue with him. At one point, Mokai assured Plaintiffs that he would begin paying them directly, but Mokai never did so.

69.   On another occasion, after Heath and E.S. Homes had replaced Sandoval and Greilyn, Miranda complained to Heath that Heath had not paid him. Miranda further explained that, because of the missing payment, he was struggling to afford food. Heath promised to pay Miranda the next day, but he did not do so until about one week later.

70.   Plaintiffs suffered consequential damages as a result of not receiving their payment in full or on time.

71.  Because he did not receive all his wages for his work for Defendants, Plaintiff Amaya fell behind on his rent and had to borrow money to cover his basic expenses.

72.  Because he did not receive all his wages for his work for Defendants, Plaintiff Miranda was unable to afford his rent and was evicted from his housing. He was also unable to afford food and lost weight as a result. In addition, he was unable to pay child support for his daughter.

73.  Because he did not receive all his wages for his work for Defendants, Plaintiff Aleman could no longer afford rent at his home and had to move. He also had to borrow funds to pay for cancer treatment for his child.

74.  Pursuant to the FLSA, 29 C.F.R. § 516, and Md. Code Ann., Lab. & Empl. § 3-424, Defendants are required to maintain a record of each hour, day, and week worked by any employee.

75.  The exact number of hours worked by Plaintiffs for their joint employers will be determined through discovery.

76.  Defendants unlawfully failed or refused to compensate Plaintiffs in full and on time for their work as required by the FLSA, 29 U.S.C. § 207(a)(1), the MWHL, Md. Code Ann., Lab. & Empl., § 3-415(a), and the MWPCL, *id.* § 3-505(a).

77.  Defendants' unlawful failure or refusal to pay all wages due and owing to Plaintiffs was willful, deliberate and/or in reckless disregard of Plaintiffs' rights to be paid fully and timely for work performed, including overtime, and was not the result of a bona fide dispute.

78.  Defendants unlawfully failed or refused to set regular pay periods and timely pay wages to the Plaintiffs as required by the MWPCL, Md. Code Ann., Lab. & Empl. § 3-502.

79.  Defendants unlawfully failed or refused to pay Plaintiffs all wages due for work

performed before the termination of Plaintiffs' employment, as required by the MWPCL, Md. Code Ann., Lab. & Empl. § 3-505.

80.   At all times relevant to this action, Defendants unlawfully failed or refused to comply with the posting requirements of MWHL, Md. Code Ann., Lab. & Empl. § 3-423, and FLSA, 29 C.F.R. § 516.4.

81.   Plaintiffs' work for Defendants was performed in the usual course of Defendants' business of property renovation and repair.

82.   No Plaintiff was engaged in an independent business or occupation to perform work of the same nature as the work they performed for Defendants during their work for Defendants.

83.   No Plaintiff ever signed an affidavit indicating that they were an independent contractor.

84.   Defendants never entered into a written contract with any Plaintiff related to the work described herein.

85.   Defendants never provided any Plaintiff with written notice of independent contractor status in accordance with Md. Code Ann., Lab. & Empl. § 3-914.

86.   Although Plaintiffs were Defendants' employees, Defendants did not apply employment tax withholdings to the payments they issued to Plaintiffs.

## Collective Action Allegations Under the FLSA

87.   Plaintiffs repeat and incorporate by reference all the allegations set forth above.

88.   This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, damages, interest, and attorneys' fees and costs under the FLSA.

89.   Plaintiffs and similarly situated individuals are victims of Defendants' common

scheme to violate the FLSA.

90.   Defendants' scheme involved: (a) failing to pay employees the minimum wage for all hours worked, and (b) failing to pay employees 1.5 times their regular hourly rate when they worked in excess of 40 hours per week.

91.   Plaintiffs seek collective action status on behalf of all construction workers employed by Defendants who did not receive the minimum wage for all hours worked or the overtime rate for all hours worked in excess of 40 per week beginning three years before the filing of this Complaint ("the Collective").

92.   Members of the Collective were all similarly subject to Defendants' common practices, policies, or plans requiring or permitting them to perform work for Defendants' benefit (a) without payment at the federal minimum wage rate, and (b) in excess of 40 hours per week without compensation at time-and-a-half their regular rate for those excess hours.

93.   Plaintiffs are representative of the Collective, have similarly suffered because of Defendants' scheme to violate the FLSA, and are acting in the interests of similarly situated class members as well as Plaintiffs' own interests in bringing this action.

94.   These similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records. They may readily be notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, damages, interest, and attorneys' fees and costs under the FLSA.

## COUNT I

**FAIR LABOR STANDARDS ACT**
**(Denial of Minimum and Overtime Wages)**

95.   Plaintiffs repeat and incorporate by reference the allegations set forth above.

17

96.   Defendants failed to pay Plaintiffs and similarly situated employees minimum and overtime wages in violation of the FLSA, 29 U.S.C. §§ 206(a)(1) and 207(a)(1).

97.   Defendants' violations were not the result of a good faith, reasonable error.

98.   Defendants Infinite Homes and Mokai are liable to Plaintiffs and similarly situated employees for each individual's unpaid minimum and overtime wages plus an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

99.   Defendants Greilyn and Sandoval and E.S. Homes and Heath are liable to Plaintiffs and similarly situated employees for each individual's unpaid minimum and overtime wages for work performed during these Defendants' respective tenures, plus an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT II

### MARYLAND WAGE AND HOUR LAW
### (Denial of Minimum and Overtime Wages)

100. Plaintiffs repeat and incorporate by reference the allegations set forth above.

101. Defendants unlawfully failed or refused to pay Plaintiffs' and similarly situated employees' wages in violation of the MWHL, Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a), and 3-420.

102. Defendants did not act in good faith and with a reasonable belief that the wages paid to Plaintiffs and similarly situated employees were not less than the wages required under the MWHL.

103. Defendants Infinite Homes, Mokai, Greilyn, Sandoval, E.S. Homes, and Heath are liable to Plaintiffs Amaya and Miranda and similarly situated employees pursuant to §§ 3-427(a)

and (d) of the MWHL for each individual's unpaid minimum and overtime wages plus an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

104. Defendants Infinite Homes, Mokai, Greilyn, and Sandoval are liable to Plaintiff Aleman and similarly situated employees pursuant to §§ 3-427(a) and (d) of the MWHL for their unpaid minimum and overtime wages plus an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT III

### MARYLAND WAGE PAYMENT AND COLLECTION LAW
### (Failure to Pay All Wages Timely and Regularly)

105. Plaintiffs repeat and incorporate by reference the allegations set forth above.

106. All Defendants were involved in the payment of Plaintiffs' wages through the determination of pay rates, the issuance of checks or bank transfers, or the promise of payment, or through a combination of these activities.

107. Defendants' failures or refusals to pay Plaintiffs and similarly situated employees all wages due on their regular paydays violated the MWPCL, Md. Code Ann., Lab. & Empl. § 3-502.

108. Defendants' failures or refusals to pay Plaintiffs all wages due for work that they performed before the termination of their employment violated the MWPCL, Md. Code Ann., Lab. & Empl. § 3-505.

109. Defendants Infinite Homes, Mokai, Greilyn, Sandoval, E.S. Homes, and Heath are liable to Plaintiffs Amaya and Miranda and similarly situated employees pursuant to § 3-507.2 of the MWPCL, for each individual's unpaid wages, plus an additional double damages, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

19

110. Defendants Infinite Homes, Mokai, Greilyn, and Sandoval are liable to Plaintiff Aleman and similarly situated employees pursuant to § 3-507.2 of the MWPCL, for their unpaid wages, plus an additional double damages, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT IV

### MARYLAND WORKPLACE FRAUD ACT
### (Failure to Properly Classify Employees)

111.    Plaintiffs repeat and incorporate by reference the allegations set forth above.

112.    Defendants directed and controlled Plaintiffs' performance of their work for Defendants.

113.    The work Plaintiffs performed for Defendants constituted "construction services," as that term is defined in the MWFA, Md. Code Ann., Lab. & Empl. §§ 3-901 and 3-902.

114.    Defendants misclassified Plaintiffs as independent contractors or exempt persons in violation of the MWFA. *Id*. § 3-903.

115.    Defendants did not provide Plaintiffs with notice of independent contractor status in accordance with Md. Code Ann., Lab. & Empl. § 3-914 or Md. Code Regs. 09.12.40.02.

116.    On information and belief, Defendants did not keep records in accordance with Md. Code Regs. 09.12.40.03.

117.    Defendants had actual knowledge, deliberate ignorance, and/or reckless disregard for the truth, and therefore acted knowingly in their misclassification of Plaintiffs as independent contractors or exempt persons.  Md. Code Ann., Lab. & Empl. § 3-904(b).

118.    As the direct and proximate result of Defendants' knowing violation of the MWFA, Plaintiffs suffered economic damages.

119.   Pursuant to the MWFA, Md. Code Ann., Lab. & Empl. § 3-911(c), Defendants are liable to Plaintiffs for their economic damages including but not limited to unpaid minimum wage and overtime; an additional amount of three times the amount of such economic damages; interest; and reasonable attorneys' fees and costs.

## COUNT V

## QUANTUM MERUIT

120. Plaintiffs repeat and incorporate by reference the allegations set forth above.

121. Defendants had a contractual and equitable obligation to compensate Plaintiffs and similarly situated employees with legally required regular time and overtime wages for the regular and overtime hours Plaintiffs and similarly situated employees worked for Defendants.

122. Plaintiffs and similarly situated employees conferred benefits upon Defendants by working regular and overtime hours on Defendants' behalf.

123. Defendants had an appreciation or knowledge of the benefits being conferred upon them by Plaintiffs and similarly situated employees.

124. Despite the foregoing, Defendants retained the regular and overtime wages due and owing to Plaintiffs and similarly situated employees in circumstances that make it inequitable for Defendants to have received the benefits of Plaintiffs' and similarly situated employees' labor without paying for their value.

125. Defendants Infinite Homes, Mokai, Greilyn, Sandoval, E.S. Homes, and Heath are liable to Plaintiffs Amaya and Miranda and similarly situated employees in quantum meruit, together with an award of interest and costs.

126. Defendants Infinite Homes, Mokai, Greilyn, and Sandoval are liable to Plaintiff Aleman and similarly situated employees in quantum meruit, together with an award of interest and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a)  Certify this action as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b);

b)  At the earliest possible time, allow Plaintiffs to give notice of this collective action, or that the Court issue such notice, to similarly situated individuals. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit, among other things;

c)  Find that Defendants' actions were willful, not in good faith, not reasonable, and not the result of a bona fide dispute;

d)  Grant judgment against Defendants Infinite Homes, Mokai, Greilyn, and Sandoval, jointly and severally, and in favor of each plaintiff in the amount of each plaintiff's respective unpaid wages, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

e)  Grant judgment against Defendants Infinite Homes, Mokai, Greilyn, Sandoval, E.S. Homes, and Heath jointly and severally, and in favor of Plaintiffs Amaya and Miranda in the amount of each plaintiff's respective unpaid wages, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

f)  Grant judgment against Defendants Infinite Homes, Mokai, Greilyn, and Sandoval, jointly and severally, and in favor of each plaintiff in the amount of each plaintiff's

respective unpaid wages, plus an equal amount in liquidated damages pursuant to MWHL, Md. Code Ann., Lab. & Empl. §§ 3-427(a) and (d);

g)  Grant judgment against Defendants Infinite Homes, Mokai, Greilyn, Sandoval, E.S. Homes, and Heath, jointly and severally, and in favor of Plaintiffs Amaya and Miranda in the amount of each plaintiff's unpaid wages plus double damages pursuant MWPCL, *id*. § 3-507.2;

h)  Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs in the amount of each Plaintiffs' economic damages plus treble damages pursuant to the MWFA, *id*. § 3-911;

i)  Grant judgment against Defendants Infinite Homes, Mokai, Greilyn, Sandoval, E.S. Homes, and Heath, jointly and severally, in quantum meruit, as to Plaintiffs Amaya and Miranda and award restitution and/or disgorgement of profits to each plaintiff;

j)  Grant reasonable incentive awards for the Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of the FLSA Collective, and for the risks they took in doing so;

k)  Award Plaintiffs pre- and post-judgment interest on all amounts owed as allowed by law;

l)  Award Plaintiffs costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216(b), Md. Code Ann., Lab. & Empl. § 3-507.2, and Md. Code. Ann., Lab. & Empl. § 3-427(d); and

m)  Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this 5th day of January, 2024,

_____/s/_____

Monisha Cherayil (Fed. Bar No. 18822)
Diana Jarek (Fed. Bar No. 30769)
Public Justice Center
201 North Charles Street, Suite 1200
Baltimore, MD 21201
Tel: (410) 625-9409
Fax: (410) 625-9423
cherayilm@publicjustice.org
jarekd@publicjustice.org

*Attorneys for Plaintiffs*