**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOSE ALFREDO AMAYA, et al., | * | |
| Plaintiffs, | * | Civil Action No. 1:24-cv-00031-SAG |
| v. | * | |
| INFINITE HOMES GROUP 646/500 LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL
CERTIFICATION AND COURT-FACILITATED NOTICE**

## I.      INTRODUCTION

Plaintiffs Jose Alfredo Amaya, Luis Miranda, and Moises Aleman (collectively, "Plaintiffs") by and through undersigned counsel, move for conditional certification of a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and for approval and facilitation of notice of this action to similarly situated persons.  Defendants are individuals and LLCs engaged in the business of rehabilitating residential properties in Baltimore, Maryland.  From December 2021 until at least September 2022, Defendants employed Plaintiffs and similarly situated workers to perform demolition and construction work on those properties.  Plaintiffs challenge Defendants' classification of Plaintiffs and similarly situated employees as independent contractors and Defendants' policy or practice of failing to pay them proper overtime compensation.

Through this Motion, Plaintiffs seek an order permitting them to give notice of this lawsuit to other similarly situated persons to advise them of their opportunity to participate and proceed collectively to pursue their claims.  The prospective collective members are similarly

situated to Plaintiffs because they (1) were engaged to work by Defendants at the same construction sites as Plaintiffs; (2) worked nearly identical schedules as Plaintiffs, which included routinely working more than 40 hours per workweek; (3) were all paid the same rate of $200 per day for their work; and (4) were all subject to Defendants' common, uniform compensation policy and practice of denying legally required overtime wages for any hours worked beyond 40 per workweek.  Plaintiffs estimate that between 10 and 15 employees of Defendants are similarly situated and have similar claims that can be efficiently and justly resolved through a collective action.

Accordingly, Plaintiffs request that the Court: (1) authorize Plaintiffs' FLSA overtime claims to proceed as a collective action; (2) toll the statute of limitations for all members of the collective from May 28, 2024, the date of the filing of this Motion; (3) approve the issuance of Plaintiffs' proposed Notice of Collective Action Lawsuit (the "Notice") and Opt-In Consent Form (attached as Exhibits 1 and 2, respectively)[1] to all individuals engaged to work by Defendants to work at any of the same worksites as Plaintiffs[2] at any time since May 28, 2021; (4) order Defendants to provide Plaintiffs' counsel, within 14 days of the Court's order, an electronic spreadsheet containing the full names and contact information of all members of the collective, including those individuals' last known addresses, telephone numbers, email addresses, and dates of employment with Defendants; (5) authorize Plaintiffs to disseminate the Notice and Opt-In Consent Form by mail, email, and text message; (6) authorize Plaintiffs to

---

[1] Because many in the proposed collective may speak Spanish as their primary language and have limited ability to speak and read English, Plaintiffs propose using both English and Spanish versions of the Notice and Opt-In Consent Form.  Plaintiffs have included a Spanish translation of the Opt-In Consent Form with this filing and will also translate the Notice upon approval by the Court.
[2] A list of these worksites is provided *infra* in Section II.

create a website with the Notice and Opt-In Form and to advertise via Facebook; and (7) authorize Plaintiffs to disseminate a reminder notice at the midpoint of the opt-in period. *See generally Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171–72 (1989) (describing court's role in supervising the notice process).

## II.   FACTS

### A.  Description of Defendants

Defendants are (1) corporate entities operating under the trade name "Infinite Homes" that own the properties where Plaintiffs performed demolition and construction work, namely Infinite Homes Group 646/500 LLC, Infinite Homes Group 218 LLC, Infinite Homes Group 4108 LLC, Infinite Homes Group 21AC LLC, Infinite Homes Group 8N LLC, Infinite Homes Group 21AA LLC, Infinite Homes Group 21AD LLC, Infinite Homes Group 21AE LLC, Infinite Homes Group 21AHI LLC, Infinite Homes Group 2601 LLC, Infinite Homes Group 3629 LLC, (collectively, "Infinite Homes"); (2) Shay Mokai,[3] who is the principal of and controls or shares control over all Infinite Homes corporate entities; (3) Greilyn Construction LLC ("Greilyn Construction"), one of two subcontractor companies that Mokai and Infinite Homes engaged to assist with demolition and construction work on the Infinite Homes properties; (4) Alfredo Sandoval, who is the principal of and controls Greilyn Construction; (5) E.S. Homes, LLC ("E.S. Homes"), the other subcontractor company that Mokai and Infinite

---

[3] The Baltimore Sun recently described Mr. Mokai's control over Infinite Homes and his use of it to buy, "refurbish[,] and rent" distressed properties in Baltimore City. *See* Giacomo Bolongna, *A New Yorker bets big on Baltimore's vacant homes. 'It's going to be crazy down here.'*, The Baltimore Sun (July 7, 2022), https://www.baltimoresun.com/2022/07/07/a-new-yorker-bets-big-on-baltimores-vacant-homes-its-going-to-be-crazy-down-here/ ("With a series of more than two dozen LLCs, the firm has been buying up residential properties in Baltimore. Mokai said Infinite Homes has spent about $20 million buying property, with roughly 250 units split among 75 properties, including vacants.").

Homes engaged to assist with demolition and construction work on the Infinite Homes properties; and (6) Eron Heath, who is the principal of and controls E.S. Homes.  ECF 6, First Am. Compl. ¶¶ 2, 11-32, 38; ECF 27, Heath Answer ¶¶ 26-27, 31; ECF 28, E.S. Homes Answer ¶¶ 26-27, 31; ECF 29, Mokai and Infinite Homes Answer ¶¶ 11-21, 29-31; Ex. 3, Amaya Decl. ¶¶ 1-5; Ex. 4, Miranda Decl. ¶¶ 1, 3, 8, 17; Ex. 5, Aleman Decl. ¶¶ 1, 3.

**B.  The Work Sites**

During the period relevant to this action, Infinite Homes owned various residential properties in Baltimore, including those where Plaintiffs worked: 500 Druid Hill Avenue, 502 Druid Hill Avenue, 1604 McHenry Street, 1606 McHenry Street, 1622 McHenry Street, 218 East 22nd Street, 845 North Luzerne Avenue, 4027 Hilton Road, 1719 Montpelier Street, 1626 East Federal Street, 506 East Lynne Avenue, 1808 McCulloh Street, 8 North Abington Avenue, 2907 Erdman Avenue, 7307 Linden Avenue, 2839 Lake Avenue, 2825 Clifton Avenue, 14 East Madison Street, and 2648 Polk Street ("the Infinite Homes Properties").  First Am. Compl. ¶ 31; Mokai and Infinite Homes Answer ¶ 31; Ex. 3, Amaya Decl. ¶ 1; Ex. 4, Miranda Decl. ¶ 1; Ex. 5, Aleman Decl. ¶ 1.  In late 2021, Infinite Homes, under Mokai's direction, contracted with Greilyn Construction to perform construction work on its properties.  First Am. Compl. ¶ 32; Mokai and Infinite Homes Answer ¶ 32 (admitting that some Infinite Homes entities contracted with Greilyn).  Plaintiffs and other construction workers were hired to assist with this work. First Am. Compl. 33; Mokai and Infinite Homes Answer ¶ 33 (admitting that "Sandoval hired Plaintiffs"); Ex. 3, Amaya Decl. ¶ 1; Ex. 4, Miranda Decl. ¶ 1; Ex. 5, Aleman Decl. ¶ 1.  In May 2022, Infinite Homes reassigned Greilyn Construction and contracted with E.S. Homes to continue the rehabilitation of its properties.  First Am. Compl. ¶ 38; Mokai and Infinite Homes Answer ¶ 29 (admitting that "around mid-May 2022, certain Infinite Homes Defendants

4

contracted with E.S. Homes instead of Greilyn"); Ex. 3, Amaya Decl. ¶ 15; Ex. 4, Miranda Decl. ¶ 8.  E.S. Homes kept Plaintiffs Amaya and Miranda as well as other workers to continue the rehabilitation and repair work on the Infinite Homes Properties.  Ex. 3, Amaya Decl. ¶ 16; Ex. 4, Miranda Decl. ¶ 8.

### C.  Defendants' Policies and Practices at the Work Sites

Defendants misclassified Plaintiffs and similarly situated workers as independent contractors when they were in fact Defendants' employees, subject to Defendants' strict supervision and control; Defendants told them where to go, what to do, and when and how to do it.  Ex. 3, Amaya Decl. ¶¶ 2-6, 10-11; Ex. 4, Miranda Decl. ¶¶ 3-7, 9, 11; Ex. 5, Aleman Decl. ¶¶ 4-6.  Consistent with this misclassification, Defendants never took employment tax deductions from Plaintiffs' or their coworkers' wages.  Ex. 3, Amaya Decl. ¶¶ 18-19 and Attachment; Ex. 4 Miranda Decl. ¶¶ 16-18 and Attachment; Ex. 5 Aleman Decl. ¶¶ 13-15 and Attachment.  Despite their attempt to classify Plaintiffs as independent contractors, Defendants never provided Plaintiffs with the written notice of this classification that Maryland law requires.  Ex. 3, Amaya Decl. ¶ 20; Ex. 4 Miranda Decl. ¶ 19; Ex. 5 Aleman Decl. ¶ 16; Md. Code Ann., Lab. & Empl. § 3-914(b), (c).  Also consistent with this misclassification, Defendants maintained a policy and practice of never paying overtime compensation to Plaintiffs or similarly situated workers for the many hours they worked beyond 40 per workweek; instead, Plaintiffs and similarly situated workers were promised pay of $200 per workday, regardless of the total number of hours worked in a week.  Ex. 3, Amaya Decl. ¶¶ 12-14, 21, 23; Ex. 4 Miranda Decl. ¶¶ 12-15, 20; Ex. 5 Aleman Decl. ¶¶ 10-13, 18.

### D.  Pervasiveness of Violations

Plaintiffs performed their work on the Infinite Homes Properties alongside other similarly situated construction workers.  As they worked together completing whatever tasks Defendants assigned them on a given day, they were all subject to the same policies and practices with respect to their working conditions, hours, and pay.  Plaintiffs conversed with the other workers and learned that they had also been promised a rate of or around $200 per day, regardless of the total number of hours they might work in a week.  Ex. 3, Amaya Decl. ¶¶ 3-6, 9-11, 13, 19, 21-23; Ex. 4 Miranda Decl. ¶¶ 2, 4, 6-8, 13, 15, 18-20; Ex. 5 Aleman Decl. ¶¶ 4-6, 8, 12, 15-18.  Plaintiffs saw other construction workers arrive to and depart from the worksites around the same time as them, and therefore know that other workers also worked more than 40 hours per workweek.  Ex. 3, Amaya Decl. ¶ 21; Ex. 4 Miranda Decl. ¶¶ 7, 15; Ex. 5 Aleman Decl. ¶ 18.

Plaintiffs estimate that, on any given day that a property was going through rehabilitation and repair, there were five to eight workers engaged in that work across the Infinite Homes Properties.  Ex. 3, Amaya Decl. ¶ 23; Ex. 4, Miranda Decl. ¶ 2.  Although Plaintiffs stopped working on the Infinite Homes worksites by September 2022, they have reason to believe that the work on those properties continued for at least several months after September 2022.  Ex. 3, Amaya Decl. ¶ 22.  During the three years preceding the filing of this Motion, Plaintiffs estimate that at least 10 to 15 individuals worked for Defendants on the 19 Infinite Homes Properties Plaintiffs worked at under the same policies and practices as Plaintiffs.  *Id.*; Ex. 4, Miranda Decl. ¶ 20.

### III.  <u>ARGUMENT</u>

Plaintiffs request that the Court conditionally certify an FLSA collective comprised of anyone who performed demolition or construction work for any of the Defendants at any of the

19 Infinite Homes Properties Plaintiffs worked at from May 28, 2021, through the date of the close of the opt-in period.  For the reasons set forth below, conditional certification is appropriate.

### A.  Legal Standard

The FLSA permits employees to pursue a collective action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b); *see also Quinteros v. Sparkle Cleaning*, Inc., 532 F. Supp. 2d 762, 771 (D. Md. 2008).  Such collective actions not only further the remedial purpose of the FLSA, but also serve the interests of the courts and the parties alike. Collective actions provide employees an opportunity to pool their resources and to mitigate their reasonable fear of reprisal for challenging their employer individually.  *See Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. WMN-10-2336, 2011 WL 5244421, at *2, *5 (D. Md. Nov. 1, 2011) (recognizing that collective action benefits plaintiffs by permitting them to pool resources, and that "the absence of this type of collective action would leave most employees powerless to enforce the law").  At the same time, certification of collective actions promotes judicial economy because "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche*, 493 U.S. at 170; *see also Calderon v. GEICO Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *7 (D. Md. Jan. 12, 2011) (noting that court-authorized notice avoids "multiplicity of duplicative suits").

In evaluating whether to certify a collective action pursuant to the FLSA, "courts generally follow a two-stage process."  *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012).  "In the first stage, commonly referred to as the notice stage, the court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members

are similarly situated, such that court-facilitated notice to putative class members would be appropriate." *Id.* (citation and quotation marks omitted).  This threshold determination often occurs, as in this case, before the completion of discovery.  *See Lancaster v. FQSR*, No. TDC-19-2632, 2020 WL 5500227, at *2 (D. Md. Sept. 11, 2020) (describing the notice stage as a "pre-discovery determination").  At the second stage, which typically occurs after discovery, the court makes a final determination as to whether the collective is truly "similarly situated." *Id.*; *see also Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (explaining two-step inquiry for determining whether a FLSA action may proceed as a collective action).

At the notice stage—the subject of the instant Motion—Plaintiffs need only make a "modest factual showing" that the putative collective members are similarly situated.  *Randolph v. PowerComm Constr., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014) (quotation marks omitted). Potential plaintiffs are similarly situated when they "together were victims of a common policy or scheme or plan that violated the law." *Quinteros*, 532 F. Supp. 2d at 772.  This Court has also found that plaintiffs are similarly situated when they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from similar job requirements and pay provisions." *Robinson v. Empire Equity Grp., Inc.*, No. WDQ-09-1603, 2009 WL 4018560 (D. Md. Nov. 18, 2009) (citation and alterations omitted).

To meet their modest burden at this stage, Plaintiffs may rely on "factual evidence by affidavits or other means," *Quinteros*, 532 F. Supp. 2d at 772, including the pleadings, *see, e.g., Schilling v. Schmidt Baking Co., Inc.*, No. 16 Civ. 2498, 2018 WL 3520432, at *2 (D. Md. July 20, 2018) (stating that whether collective members are similarly situated depends on "'substantial allegations' in the pleadings and any submitted affidavits or declarations"); *Amrhein v. Regency Mgmt. Servs.*, LLC, No. 13 Civ. 1114, 2014 WL 1155356, at *8 (D. Md.

Mar. 20, 2014) (preliminary showing is "typically by pleadings and affidavits").  Courts may

consider hearsay "at the notice stage where the affiant has knowledge of the statement." *Calder*

*v. GGC-Baltimore, LLC*, No. CIV. BPG-12-2350, 2013 WL 3441178, at *2 n.1 (D. Md. July 8,

2013); *see also Desmond v. All., Inc.*, No. CIV. CCB-14-3499, 2015 WL 2165115, at *4 (D. Md.

May 7, 2015) (relying on *Calder* and crediting a plaintiff's "declaration mak[ing] clear she

discussed the alleged FLSA violations with" coworkers who "indicated that they were subject to

the same practices").  Plaintiffs need not prove their case on the merits, and courts are "not to

engage in" "merit-based questions" at this stage.  *Alderoty v. Maxim Healthcare Servs., Inc.*, No.

TDC-14-2549, 2015 WL 5675527, at *10 (D. Md. Sept. 23, 2015).  "Because the court has

minimal evidence at this stage, this determination is made using a fairly lenient standard, and

typically results in conditional certification of a representative class." *Mendoza v. Mo's*

*Fisherman Exch., Inc.*, No. ELH-15-1427, 2016 WL 3440007, at *12 (D. Md. June 22, 2016)

(citation and alterations omitted).

### B.  Plaintiffs and the Proposed Collective Are Similarly Situated.

Plaintiffs and the members of the proposed collective are similarly situated because they

did the same work on the same properties on the same schedule for the same $200 per day—and

all were subject to the same no-overtime policy despite working many hours beyond 40 per

workweek.  Plaintiffs request that the Court grant conditional certification of the collective

described as follows: all individuals engaged by any of the Defendants to perform demolition or

construction work at any of the 19 Infinite Homes Properties Plaintiffs worked at from May 28,

2021, through the date of the close of the opt-in period. Through the allegations in the

Complaint, as well as the detailed declarations and attached documentary evidence submitted by

Plaintiffs in support of this Motion, Plaintiffs easily show that they and the members of the proposed collective are similarly situated under the "lenient standard" applicable here. *Id.*

Plaintiffs and proposed members of the collective were all engaged by Defendants to perform construction work at one or more of the Infinite Homes Properties in Baltimore. All were promised pay of $200 per day, regardless of how many hours they worked per week. Ex. 3, Amaya Decl. ¶¶ 3, 5-6, 9-11, 13, 19, 21-23; Ex. 4 Miranda Decl. ¶¶ 2, 6-8, 13, 15, 18-20; Ex. 5 Aleman Decl. ¶¶ 5-6, 8, 12, 15-18. Plaintiffs each attach to their declarations checks representative of those they and others received—all for $1,000, representing five days of work at $200 per day. Ex. 3, Amaya Decl. ¶ 18 and Attachment; Ex. 4 Miranda Decl. ¶ 17 and Attachment; Ex. 5 Aleman Decl. ¶ 13 and Attachment. Critically, they were all subject to the same misclassification scheme by Defendants. This misclassification is evidenced by facts including (1) Defendants' policy or practice of promising the workers a daily pay rate that did not vary, regardless of the total number of hours worked in a week and (2) Defendants' policy or practice of taking no deductions for employment taxes from workers' wages. Ex. 3, Amaya Decl. ¶¶ 13, 18-19; Ex. 4, Miranda Decl. ¶¶ 13, 16-18; Ex. 5, Aleman Decl. ¶¶ 12-15. In addition to the misclassification, Plaintiffs were similarly situated to other workers on the Infinite Homes Properties because Defendants applied common policies to the workers collectively, including with respect to the workers' schedules and daily assignment of work. Ex. 3, Amaya Decl. ¶¶ 2-5, 7, 10-11; Ex. 4, Miranda Decl. ¶¶ 3-4, 6-9, 11; Ex. 5, Aleman Decl. ¶¶ 4-7, 18.

Plaintiffs have comfortably met their burden to establish the existence of similarly situated collective members for the purposes of conditional certification. Plaintiffs uniformly allege that Defendants have a "common policy, scheme, or plan" of "violat[ing] the law" by misclassifying them as independent contractors and, as a result, failing to pay them proper

overtime compensation.  *Butler*, 876 F. Supp. 2d. at 566.  Although Plaintiffs and others

regularly worked more than 40 hours each week, Defendants did not provide overtime

compensation for hours worked beyond 40.  Plaintiffs' detailed declarations based on their

personal knowledge of the Defendants' uniform policies, along with the attached documentary

evidence, more than suffice to meet Plaintiffs' modest burden of demonstrating that there are

similarly situated workers who should receive notice of their right to opt-in to this action.

### C.  The Statute of Limitations Should Be Tolled for All Members of the Collective.

Plaintiffs request that the Court toll the statute of limitations for all members of the

Collective from May 28, 2024—the date on which Plaintiffs filed this Motion—through the date

the Court enters an Order on the Motion.  Courts frequently allow for tolling during the

pendency of a motion for conditional certification.  *See, e.g.*, *McCoy v. Transdev Servs., Inc.*, No.

DKC 19-2137, 2020 WL 2319117, at *5 (D. Md. May 11, 2020) (granting plaintiffs' request to

toll statute of limitations for members of the collective while motion for conditional certification

was pending); *Craighead v. Full Citizenship of Maryland, Inc.*, No. PX-17-595, 2018 WL

925416, at *4 (D. Md. Feb. 16, 2018) (tolling statute of limitations until the date "notice [was]

effectuated"); *Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 28192, at *2–3

(N.D. W.Va. Jan. 5, 2012) (citing cases and tolling statute of limitations from date on which

plaintiffs filed their motion for conditional certification).  Such tolling ensures that the passage of

the time required to litigate and resolve the motion does not diminish or extinguish the claims of

potential plaintiffs.  *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y.

2012) ("[T]he delay caused by the time required for a court to rule on a motion, such as one for

certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance

justifying application of the equitable tolling doctrine.") (citation and quotation marks omitted).

**D.  The Proposed Notice to Potential Opt-In Collective Members Is Appropriate.**

Having shown that there are similarly situated workers, Plaintiffs request the Court's assistance in facilitating notice to those individuals of their option to join the underlying action. To effectuate the policies of the FLSA's collective suit provisions, the communication must "provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Butler*, 876 F. Supp. 2d at 574–75 (alterations and quotation marks omitted).  The benefits of a collective action cannot be realized if the employees who suffered from the unlawful activity do not receive timely notice of the action and their opportunity to opt-in.  *See Hoffmann-La Roche*, 493 U.S. at 170.  Accordingly, courts have the power to facilitate the issuance of notice of an action to potential collective members.  *See id.* at 170–71; *Williams v. Long*, 585 F. Supp. 2d 679, 684 (D. Md. 2008).

Time is of the essence in issuing notice in an FLSA collective action because, unless tolled, the statute of limitations continues to run until aggrieved employees affirmatively opt-in to the action.  *See Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. CCB-07-455, 2008 WL 554114, at *4 (D. Md. Feb. 26, 2008) ("Because each potential plaintiff must affirmatively opt in to the lawsuit, and because the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form, court-facilitated notice is crucial.") (citation and quotation marks omitted).  In the absence of timely notice, employees with viable claims of unpaid wages could be deprived of the opportunity to participate until after their claims are diminished or extinguished by the running of the limitations period.

12

Plaintiffs request that the Court approve their proposed Notice of Collective Action and Opt-In Consent Form, attached as Exhibits 1 and 2, for distribution to the proposed collective. Plaintiffs have carefully structured the proposed Notice to provide accurate and relevant information about the pending action, so that other members of the proposed collective can make an informed decision about their participation.  Modeled on notices previously approved by this Court, the proposed Notice states the names of the parties and the nature of Plaintiffs' claims, clarifies that the question of liability has not been decided and that the results of this lawsuit are not guaranteed, explains how to opt in to the action, states that opt-in plaintiffs may proceed with attorneys of their own choosing, and provides assurance that it is unlawful for employers to retaliate against those who participate.  *See, e.g.*, *Bobb v. FinePoints Private Duty Healthcare, LLC*, No. JKB-23-03129, 2024 WL 1299929, at *5 (D. Md. Mar. 27, 2024); *Aytch v. Trulife Health Servs., LLC*, No. 1:17-cv-02769-ELH, 2018 WL 1784461, at *5 (D. Md. Apr. 12, 2018).

To accomplish effective distribution of the Notice, Plaintiffs request an Order requiring Defendants to promptly provide Plaintiffs an electronic spreadsheet of names, last known addresses, telephone numbers, email addresses, and dates of employment for all members of the proposed collective.  These basic components of the proposed notification plan reflect longstanding standard practice in FLSA litigation, as reaffirmed in previous orders of this Court and others within the Fourth Circuit.  *See, e.g.*, *Bobb v. FinePoints Private Duty Healthcare, LLC*, No. JKB-23-03129, Doc. 25 (D. Md. Mar. 27, 2024) (directing defendants to produce to plaintiff's counsel "a computer-readable list containing the full name, last known residential address, last known email address, last known cellular phone number, dates of employment and location of employment of each individual who is a member of the collective"); *Brown v. Energy Servs. Grp. Int'l, Inc.*, No. 3:21-cv-611, 2021 WL 5889707, at *3 (E.D. Va. Dec. 13, 2021)

("Courts within the Fourth Circuit have found notice through regular mail, email, and text messaging to be warranted[.]") (citation omitted); *Regan v. City of Hanahan*, No. 2:16-cv-1077-RMG, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) (finding reasonable plaintiffs' request to distribute notice via direct mail, email, and text message, because "in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move"); *Mercado v. North Star Founds., Inc.*, No. WMN-10-3467, 2011 WL 1557887, at *4 (D. Md. Apr. 21, 2011) (ordering defendant to produce a "list of the full name, last known residential address, residential and cell phone numbers, work address, work phone number, date of birth, and e-mail address of each and every individual" of the proposed collective to facilitate dissemination of an FLSA collective action notice).

Plaintiffs seek an order permitting them to disseminate notice not only via U.S. mail, but also via email and text message.  With respect to text message notice, Plaintiffs propose sending a link to the Notice and Opt-In Consent Form with the accompanying language, in both English and Spanish:

> Records show that you did construction work with Shay Mokai, Alfredo Sandoval and/or Eron Heath at a property owned by Shay Mokai and/or Infinite Homes Group. You may be eligible to join a lawsuit for unpaid wages. To view the court-approved notice, please click the following link or type it into your browser: [link to website].

This language is similar to that approved by other courts that have authorized text message notice.  *See, e.g.*, *Attaway v. Hydrostatic Oil Tools, Inc.*, No. 1:19-cv-01015, 2019 WL 13113724, at *6 (W.D. Ark. Aug. 12, 2019); *Dempsey v. Jason's Premier Pumping Servs., LLC*, No. 15-cv-00703-CMA-NYW, 2015 WL 13121134, at *2 (D. Colo. Nov. 11, 2015).

Plaintiffs also request that the Court authorize them to create a website that contains the Notice in both English and Spanish, as well as a link to download both the Notice and Opt-In

Consent Form.  Online posting will help ensure effectiveness of notice, where Defendants'

records may contain outdated contact information.  In addition, Plaintiffs seek to create an

advertisement on Facebook targeted at 18-65 year-old Spanish-speaking residents of Baltimore

City and Baltimore County.[4]  Federal District Courts, including this one, have permitted the use

of websites or social media to disseminate notice of FLSA litigation where other means of

reaching potential Plaintiffs are unlikely to be successful.  *See Mendoza*, 2016 WL 3440007, at

*21–22 (authorizing plaintiffs to create a website to disseminate notice); *Montoya*, 2008 WL

554114, at *4 (authorizing the creation of a website to provide notice of a FLSA suit to

employees of a construction company, as well as the publication of the notice in three Spanish

language newspapers and posting at multiple public locations, if the company remained "unable

to provide plaintiffs with a list of employees").

      Plaintiffs propose that, to be timely, potential opt-in Plaintiffs must return their signed

consent forms to Plaintiffs' counsel, postmarked within 90 days of the date on which the Notice

and Opt-In Consent Forms are mailed.  Plaintiffs' counsel will file the Opt-In Consent Forms

with the Court on an ongoing basis and no later than one week after the end of the 90-day notice

period, the standard period for collective action notice approved by this Court.  *See, e.g.*, *Bobb*,

2024 WL 1299929, at *5 (finding plaintiff's "proposal for a 90-day opt-in period for prospective

plaintiffs to be appropriate"); *Wilson v. Marlboro Pizza, LLC*, No. 22-1465-BAH, 2024 WL

415349, at *4 (D. Md. Feb. 5, 2024) (approving a 90-day notice period); *Baylor v. Homefix*

*Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 609 (D. Md. 2020) (noting that 90 days is the

"standard" notice period for potential plaintiffs to opt in).

---

[4] Facebook allows users to create and target advertisements based on audience location and demographics.  *See* Facebook for Business, https://www.facebook.com/business/a/online-sales/ad-targeting-details (last visited May 21, 2024).

In addition, Plaintiffs seek permission to send a reminder notice, identical to the first notice, halfway through the 90-day opt-in period to all members of the proposed collective who have not responded to the first notice.  A reminder notice is "nothing more than a targeted second contact with those likely to be eligible to join the collective action," *Boyd v. SFS Commc'ns, LLC*, No. PJM 15-3068, 2017 WL 386539, at *3 (D. Md. Jan. 26, 2017), a strategy that this Court and others within the Fourth Circuit have previously approved to effectuate the remedial purposes of the FLSA.  *See id.*; *Bobb*, No. JKB-23-03129, Doc. 25 (approving plaintiff's proposed plan to send a reminder notice to potential plaintiffs); *McCoy*, 2020 WL 2319117, at *8 (relying on *Boyd* in authorizing reminder notices and rejecting defendant's argument that reminder notices potentially "stir up litigation"); *Walters v. Buffets, Inc.*, No. 6:13-cv-02995-JMC, 2016 WL 4203851, at *1 (D.S.C. Mar. 1, 2016) (approving a reminder notice as a means to "inform as many plaintiffs as possible of their right to opt into a collective action"); *Hargrove v. Ryla Teleservs., Inc.*, No. 2:11-cv-344, 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing distribution of reminder notice prior to the end of opt-in period).  Moreover, because Plaintiffs propose that the reminder notice be identical to that of the first notice, it will not prejudice Defendants or otherwise suggest anything about the merits of this lawsuit.  *See Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2016 WL 11501744, at *3 (S.D. Ohio Sept. 6, 2016) ("Because the language of the reminder notice will be identical to that of the first notice, the Court does not believe that it could be interpreted as encouragement by the Court to join the lawsuit.") (citation and quotation marks omitted).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion as follows:

a.  Conditionally certify this case as a Section 216(b) collective action;

b.  Toll the statute of limitations for all members of this collective from May 28, 2024;

c.  Approve the issuance of the English language version of Plaintiffs' proposed Notice of Collective Action Lawsuit, attached hereto as Exhibit 1, and allow Plaintiffs to translate the Notice into Spanish;

d.  Approve the issuance of the English and Spanish language versions of Plaintiffs' proposed Opt-In Consent Form, attached hereto as Exhibit 2;

e.  Order Defendants to provide Plaintiffs within 14 days of the date of the Court's order an electronic spreadsheet of names, last known mailing addresses, last known telephone numbers, last known email addresses, and dates of employment for all members of the collective who have worked for them at any point since May 28, 2021;

f.  Allow Plaintiffs to distribute the Notice and Opt-In Consent Form to all potential members of the collective via mail, email, and text message;

g.  Allow Plaintiffs to create a website with the Notice and Opt-In Consent Form and to advertise via Facebook;

h.  Authorize Plaintiffs to send, approximately halfway through the 90-day notice period, an identical reminder Notice to all members of the proposed collective who have not responded to the first Notice; and

i.  Order that members of the FLSA collective shall have 90 days from the mailing and posting of the Notice of this action to opt-in to the action, and Plaintiffs' counsel shall file Opt-In Consent Forms with the Court no later than one week after the end of the 90-day notice period.

Dated: May 28, 2024                    Respectfully submitted,


                                           /s/_____
                                       David Rodwin (Fed. Bar No. 18615)
                                       The Public Justice Center
                                       One North Charles Street, Suite 200
                                       Baltimore, MD 21201
                                       Tel: (410) 625-9409
                                       Fax: (410) 625-9423
                                       rodwind@publicjustice.org
                                       *Attorney for Plaintiffs*