# Exhibit 4:

# Miranda Declaration

DocuSign Envelope ID: D54436E0-3E5A-4E62-839A-5DB25E2ACC6C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSE ALFREDO AMAYA, et al., | * | |
| Plaintiffs, | * | Civil Action No. 1:24-cv-00031-SAG |
| v. | * | |
| INFINITE HOMES GROUP 646/500 LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

## DECLARATION OF LUIS MIRANDA

I, Luis Miranda, am over 18 years of age and am competent to testify. I declare as follows:

1. In March 2022, I was hired to do construction work on houses in Baltimore owned by Shay Mokai and Mr. Mokai's company. I worked on properties at between six and eight of the addresses in paragraph 31 of the amended complaint in this case.

2. I worked on these properties alongside other construction workers. I believe there were about eight of us in total during the time I worked there, which was from March 2022 until June 2022.

3. Alfredo Sandoval, one of the subcontractors Mokai hired to help with the work on the Baltimore properties, told me that Mokai was in charge of deciding what work we needed to do at each property.

4. On behalf of Mokai, Sandoval told me what work to do each day. I did a variety of tasks including demolition, masonry, installing doors, installing bathroom tiles and sinks, painting, and hanging drywall.

5. Initially, Sandoval told me the work hours were 8:00 a.m. to 5:00 p.m.

6.   Around my second week working on these properties, I was told to attend a meeting with Mokai and the other workers.  Mokai told us we needed to arrive to work by 7:45 a.m. and stay until at least 5:30 p.m., and that we could only take half an hour for lunch.  Sandoval's daughter was present at the meeting to interpret for Mokai between English and Spanish.

7.   After this meeting, the other workers and I adjusted our schedules accordingly.  I saw them arrive to work at 7:45 a.m. and leave at or after 5:30 p.m. on a regular basis after that, as I did.

8.   In May 2022, Mokai took Sandoval off this project and brought in Eron Heath and his company, E.S. Homes, LLC.  But regardless of whether Sandoval and his company or Heath and his company were working on the properties, the situation was the same.

9.   I often saw Mokai at the properties where I worked.  On several occasions, he told me specifically what work to do, or he told me to re-do work I had already done.  He also sent me feedback like this over text message.

10.  I speak some English, so that is how I communicated with Mokai.  Other times, we used our phones' translation features to communicate in each others' languages over text.

11.  There was another man, whose name I don't know, who often came to the properties with Mokai.  That man often told us that we needed to work faster.  He also seemed to share power over us with Mokai.

12.  When I was initially hired, Sandoval told me I would be paid $200 for each day that I worked.  He told me he would be getting this money from Mokai.

13.  I regularly talked with the other workers who worked on the same properties as me.  I learned from them that they had also been promised $200 for each day they worked, regardless

DocuSign Envelope ID: D54436E0-3E5A-4E62-839A-5DB25E2ACC6C

of whether Sandoval and his company or Heath and his company were involved.  Like me, this was their pay regardless of how many hours they worked per day.

14. I never received overtime for hours that I worked over 40 in a week, even though I regularly worked more than 40 hours in a week.

15. From my conversations with the other workers, I learned they never received overtime payments either, even though I know that like me, they worked more than 40 hours a week.

16. The payments that I received for my work never had deductions for taxes or anything else.

17. Attached to this declaration is a check I got from Sandoval's company, Greilyn Construction LLC.  It's $1,000 for five days of work at $200 per day.  Like all the payments I got for my work on Mokai's properties, whether they were from Sandoval or his company, Heath or his company, or someone else at one of their companies, no employment tax deductions were taken from my pay.

18. From conversations with my coworkers, I know that all of the workers all paid this way—our employers didn't take taxes out of anyone's pay.

19. I never got any kind of written notice from any of my employers saying that I was an independent contractor or explaining what the implications of that were.  I never saw any of my coworkers get any written notice like that, either.

20. During the last three years, I estimate that between ten and fifteen other workers did work on Mokai's properties in Baltimore for the same $200 per day with the same or very similar schedule, with no taxes taken out of their pay and no overtime pay ever.

21. I use Facebook regularly, as do many others from my community.  I think other Latino construction workers in the Baltimore area would likely notice advertisements posted there.

I declare under penalty of perjury that the foregoing is true and correct.

5/28/2024
_____
Date

DocuSigned by:
4C1280BB10CD450...
_____
Luis Miranda

4

# Attachment

1003

7-163/520 MD
5344

GREILYN CONSTRUCTION LLC
4909 ORVILLE AVE
BALTIMORE MD 21205-3134

03-20

DATE 04/11/2022

PAY
TO THE
ORDER OF _Luis Miranda Jaime_                    $ 1,000.00

_One Thousand_ _____ DOLLARS

BANK OF AMERICA

ACH R/T 052001633

FOR _Work week_

⑈00⑆00 3⑈"

## <u>CERTIFICATE OF TRANSLATION</u>

I, Lee Woo Kee, herby certify that I am fluent in Spanish and English.  I translated the foregoing document and read it back to Luis Miranda in its entirety in Spanish before he signed it.


_____          Date:  _____5/28/24_____
Lee Woo Kee
Public Justice Center
201 N. Charles St., Suite 1200
Baltimore, MD 21201