**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOSE ALFREDO AMAYA, et al., | * | |
| Plaintiffs, | * | Civil Action No. 1:24-cv-00031-SAG |
| v. | * | |
| INFINITE HOMES GROUP 646/500 LLC, et al., | * | |
| | * | |
| Defendants. | | |
| | * | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

1

**TABLE OF CONTENTS**

I. Settling Defendants Do Not Contest, and Therefore Concede, the Reasonableness of Plaintiffs' Counsel's Hourly Rates...................................................................................... 3

II. Settling Defendants' Arguments Concerning Plaintiffs' Motion for Conditional Certification Fail.................................................................................................................. 3

III. The Vast Majority of Individual Entries to which Settling Defendants Object Are Fully Compensable............................................................................................................. 6

    a. Case Development, Pleadings, and Discovery......................................................... 6

    b. Motions Practice....................................................................................................... 8

    c. Alternative Dispute Resolution Entries................................................................... 9

IV. No Across-the-Board Reduction Is Appropriate............................................................. 10

    a. Settling Defendants Fail to Contest the Record Evidence Concerning the Complexity of this Case......................................................................................... 10

    b. Settling Defendants Misunderstand the *Johnson* Factor Assessing Degree of Success and Ask the Court to Apply an Impermissible "Proportionality" Analysis................................................................................................................... 11

    c. Plaintiffs Have Not Billed for Duplication of Effort............................................. 13

V. The Time Sought on Plaintiffs' Motion for Fees and this Reply is Fully Compensable.. 14

VI. Plaintiffs' Requested Costs Are Compensable................................................................ 15

VII. Conclusion....................................................................................................................... 16

Plaintiffs Jose Alfredo Amaya, Luis Miranda, and Moises Aleman (collectively, "Plaintiffs"),[1] through undersigned counsel, submit this Reply in support of their Motion for Attorneys' Fees and Costs. Plaintiffs are entitled to their fees and costs for the reasons in their opening brief and herein.

I. **Settling Defendants Do Not Contest, and Therefore Concede, the Reasonableness of Plaintiffs' Counsel's Hourly Rates.**

The first step in reviewing an attorney's fee petition is to determine whether the hourly rates requested are reasonable. *See Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). When the court agrees that the hourly rates used in the petition are reasonable, it multiplies that rate by the number of hours reasonably invested in the case to come up with the lodestar figure. *Id*. Plaintiffs submitted hourly rates for their attorneys and paralegal that are within the range set forth by Appendix B of the Local Rules. Settling Defendants did not contest those rates and have therefore conceded their reasonableness.

II. **Settling Defendants' Arguments Concerning Plaintiffs' Motion for Conditional Certification Fail.**

Settling Defendants ask the Court to deny fees for any time spent on Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Motion for Conditional Certification")—which they mischaracterize as "unsuccessful"—but their arguments fail. In support of their position, Settling Defendants reach outside this District to cite two inapposite cases where a court denied a motion for conditional certification in whole or in part, and later denied fees for some or all of the work spent on the motion. *See Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H-KS, 2018 WL 10689708, at

---

[1] This Reply uses the short forms used to describe the parties in Plaintiffs' opening brief: Plaintiffs, Defaulting Defendants, Settling Defendants, and Settling Parties.

*8 (E.D.N.C. Sept. 28, 2018) (where plaintiffs sought conditional certification on multiple FLSA claims and succeeded only on some of them, denying fees for "work performed in connection with the FLSA claims for which conditional certification was denied"); *Pelczynski v. Orange Lake Country Club, Inc.*, No. 4:11-CV-01829-RBH, 2014 WL 2095173, at *8 (D.S.C. May 20, 2014) (where a motion for conditional certification was denied in full and plaintiffs disclaimed any entitlement to fees for work done in connection with it, denying 3.35 hours billed for "'gathering information for additional plaintiffs' and conducting legal research related to the filing of a class action" that plaintiffs had inadvertently included).  Unlike those cases, this Court never denied Plaintiffs' Motion for Conditional Certification because this case settled before the Court had a chance to address it.  Moreover, filing it was necessary both for Plaintiffs' settlement leverage and to preserve putative collective members' rights.  *Cf. Fowler v. Tenth Planet, Inc.*, No. 1:21-CV-02430-JRR, 2024 WL 3738347, at *9 (D. Md. Aug. 9, 2024) (where plaintiff's counsel sought fees for time spent on trial preparation while finalizing a settlement, rejecting defendants' argument that fees for that time should not be awarded because it was "unnecessary" given the settlement, and awarding fees for all trial preparation work sought).

Even if the Court had denied Plaintiffs' motion, Settling Defendants' attempt to preclude Plaintiffs from recovering fees would run counter to the practice of this Court.  In *Imgarten v. Bellboy Corp.*, the Court stated:

> A plaintiff who was unsuccessful at a stage of litigation that was, nevertheless, a necessary step to ultimate victory is entitled to attorneys' fees even for the unsuccessful step. In other words, plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit.

383 F. Supp. 2d 825, 839–40 (D. Md. 2005) (citation omitted).  Applying that principle in *Dorsey v. TGT Consulting, LLC*, the Court permitted plaintiffs to recover for time spent pursuing a cross-motion for summary judgment that had been denied.  CCB-10-92, 2014 WL 458999, *6

(D. Md. Feb. 4, 2014). The Court reasoned that, while the motion did not yield judgment for plaintiffs, it identified genuine factual disputes which "allowed the parties to assess the relative strength of their cases moving forward." *Id*. Here, Settling Parties reached an agreement in principle at a settlement conference 14 days after Plaintiffs filed their motion, which was supported by declaration testimony and documentary evidence in the form of checks. While impossible to quantify, it is highly likely that Plaintiffs' motion allowed Settling Defendants to "assess the relative strength of their case[]" and encouraged them to settle. *Id*.

In fact, in April 2024, Plaintiffs offered Settling Defendants a course of action that could have prevented Plaintiffs from billing Settling Defendants for this motion. As detailed in their opening brief, Plaintiffs proposed a joint motion requesting that the Court stay the case and toll the statutes of limitations of all members of the putative FLSA collective. Mem in Supp. of Pls.' Mot. for Attorneys' Fees and Costs ("Pls.' Br.") at 11-12. Settling Defendants replied that they would only agree to a private tolling agreement and would not agree to "putting it in the public record." Email Exchange, ECF 57-8 at 2. Plaintiffs explained to Settling Defendants that such a private agreement would not serve both parties' goals. While it would stay the case, such a private agreement would not fully protect the putative FLSA collective because it would not be enforceable against Defendants Greilyn Construction LLC ("Greilyn Construction") and Alfredo Sandoval (collectively, "Defaulting Defendants") if they later chose to join the case. As there was no certainty either that the case would settle or that Defaulting Defendants would remain in default, Plaintiffs were not willing weaken the putative collective members' litigation position with an off-the-record agreement inapplicable to Defaulting Defendants. Settling Defendants were aware that, absent a tolling agreement on the record, Plaintiffs would be filing a Motion for Conditional Certification, which would involve hours of work. While Settling Defendants may

now wish they had agreed to Plaintiffs' proposal, the Court should not impose on Plaintiffs the burden of Settling Defendants' strategic mistake.

### III. The Vast Majority of Individual Entries to which Settling Defendants Object Are Fully Compensable.

Settling Defendants mischaracterize several of Plaintiffs' Counsel's entries as "clerical or administrative" work. Tasks such as "scanning and mailing documents, issuing summonses, creating notebooks or files, and updating attorney's calendars" are not compensable. *See, e.g.*, *Ramirez v. 316 Charles, LLC*, No. CV SAG-19-03252, 2021 WL 662185, at *3 (D. Md. Feb. 19, 2021). However, most of the entries to which Settling Defendants object do not relate to any such administrative task. Plaintiffs respond to each challenged entry below, under the same headings as those used by Settling Defendants, for ease of comparison.

#### a. Case Development, Pleadings, and Discovery

Plaintiffs concede it was an oversight to include paralegal Woo Kee's December 12, 2022 entry of 1 hour for downloading and organizing documents. However, Woo Kee's January 24, 2023 through May 3, 2023 entries are fully compensable. These entries describe conversations about the substance of the agreements Plaintiffs signed to retain undersigned counsel. As the notes indicate, on January 24, 2023, Plaintiff Luis Miranda posed questions to counsel about the terms of the retainer, on January 26, 2023, PJC staff met to discuss the answers to his questions, and they relayed their answer back to Mr. Miranda on February 22, 2023. A core component of the attorney-client relationship is ensuring that the client understands the nature and scope of that relationship. *See* Md. Rule 19-301.2. In these entries, paralegal Woo Kee is not billing for administrative tasks such as stuffing envelopes or calendaring deadlines. Rather, the work involves a back-and-forth conversation with clients to ensure that both

6

attorneys and clients are in agreement as to the nature and scope of their relationship. This essential legal work lays the foundation for the rest of the representation.

Likewise, attorney Gellatly's July 15, 2024, entry of .1 hours for filing a notice of appearance was an oversight. However, her three entries from May 6, 2024, all relate to a core function of legal representation, effective case management. Attorney Gellatly held efficient and productive client calls because she prepared for those calls ahead of time, identifying important case updates to share with the clients and drafting questions to ask them to get the most out of the conversation. This work requires the application of legal knowledge and skill and thus is compensable at the rates charged.

Settling Defendants assert, without specificity, that certain of the following entries are "vague entries that do not appear to have any connection to this case." ECF 58, Opp'n to Pls.' Mot. for Attorneys' Fees and Costs ("Opp'n") at 6. Plaintiffs do not contend that they are entitled to compensation from Settling Defendants for matters unrelated to this case, nor have they sought it. None of the disputed entries are impermissibly vague; rather, they meet and exceed the standard for detail applied by the Court. *See Grayson v. Reg. Tapes Unlimited, Inc.*, RWT 11-887, 2013 WL 1953342, at *4 (D. Md. May 9, 2013) ("A time sheet is sufficiently detailed if it consists of an itemized listing of hours . . . and a short description for each entry explaining how the time was spent.") Attorney Cherayil's December 13, 2022 entry clearly describes a phone call during the Case Development phase, where she met with Plaintiffs to discuss this case, including limitations on the potential relief available to them. Likewise, Attorney Rodwin's April 16, 2024 entry clearly describes the six minutes he spent on an email to colleagues about strategy for next steps in this case, which were to draft a scheduling order with Settling Defendants and a show cause order for Defaulting Defendants. Although Plaintiffs

waived all entries that related solely to their efforts to seek default, it is impracticable to parse the time spent on one strategic six-minute email that related to various topics.

Plaintiffs concede they should not have sought compensation for Attorney Jarek's time spent on January 5 and January 9, 2024, not because those entries are vague, but because they relate to the administrative task of filing a pleading and an amended pleading.

    b.  **Motions Practice**

Settling Defendants also dispute the compensability of .8 hours that Attorney Cherayil spent because, they say, it is work related to the Defaulting Defendants. While Plaintiffs voluntarily excised work attributable solely to Defaulting Defendants from their fee request, Settling Defendants' attempt to leverage that concession here fails. On April 17, 2024, Attorney Cherayil drafted a lengthy email to her colleagues to provide guidance on timing and coordination around upcoming steps in this case, including the default of Greilyn Construction and Sandoval, the potential for early mediation with Settling Defendants, the changes to the Court's scheduling order that would result from such early mediation, and the amount of deposition hours Plaintiffs might need. The time spent on this email is compensable, as it was time spent determining and communicating strategy pertaining to various interconnected components in this case. At the time Attorney Cherayil recorded this one email, she could not have been expected to break down the specific time spent on each of this one email's interrelated topics. It is impracticable to ask Plaintiffs to retroactively excise some portion of it now, and, given the number of plainly compensable tasks set out in the entry, the Court should award the .8 hours in full.

### c. Alternative Dispute Resolution Entries

Settling Defendants also find fault with three of Attorney Gellatly's entries from May 23 to June 10, 2024, which total 1.2 hours and relate to conversations held with Plaintiffs in preparation for the settling conference on June 11.  Opp'n at 14.  At that time, Plaintiffs' counsel were focusing on ensuring their presentation of the case accurately and efficiently reflected their clients' experiences and goals.  This necessarily required Plaintiffs' counsel to organize the facts, including by reviewing their clients' evidence.  As the parties had agreed to produce evidence relating to hours worked and pay received, Plaintiffs' counsel billed on June 5, 2024, for time spent identifying documents responsive to this request.  On June 10, 2024, attorney Gellatly called Plaintiffs to remind them about the upcoming settlement conference and provide them the opportunity to ask any questions about it.  The work reflected by these entries required the application of legal knowledge and skill and therefore is work that should be performed by attorneys rather than by secretaries. *Compare Castillo Pacheco v. Mezeh-St. Mary's LLC*, TDC 21-2521, 2023 WL 5411071, at *1 (D. Md. Aug. 22, 2023) (recognizing "case development," "written discovery," "calculation of damages," drafting court filings, and "case management" as compensable legal activities), *with Molina v. KP Stoneymill, Inc.*, GLS-19-3123, 2021 WL 2805838, at *6 (D. Md. July 6, 2021) (listing examples of non-compensable clerical tasks, including collating, scanning, mailing, printing, and calendaring).

Overall, regarding the 18 entries specifically challenged by Settling Defendants, Plaintiffs concede that they incorrectly billed for four entries, which amount to a reduction in fees of $479.50.  The remaining 14 entries fall neatly into the categories of work regularly billed by and awarded to prevailing parties.

**IV.     No Across-the-Board Reduction Is Appropriate.**

Settling Defendants ask the Court to apply a 25 percent reduction to Plaintiffs' requested fee award, arguing that this matter was "straightforward," that Plaintiffs' requested fees are disproportionate to Plaintiffs' damages, and that the case was overstaffed.  Plaintiffs address each of these points in turn.  Notably, Settling Defendants' brief makes no mention of the extensive billing judgment already exercised by Plaintiffs, which reduced the fees by 23.68 percent, very close to what Settling Defendants now seek.[2]

      **a.  Settling Defendants Fail to Contest the Record Evidence Concerning the Complexity of This Case.**

In support of their Motion for Attorneys' Fees and Costs, Plaintiffs attached declarations of three experienced attorneys who were not involved in this case.  *See* Abrahamson Decl., ECF 57-5; Hanna Decl., 57-6; Casey Decl., 57-7.  Attorneys Abrahamson and Casey both specifically attested to the complexity of the issues that arose in this case.  *See* Abrahamson Decl., ECF 57-5 ¶¶ 10-11 (detailing the factors which contributed to the complexity of this case); Casey Decl., ECF 57-7 ¶ 6 ("This is an excellent result for the Plaintiffs, especially in light of the complexity of the matter and the difficulty of the legal issues, deriving in part from some of the defendants' apparent decision to create separate limited liability companies for each property at which the Plaintiffs worked, making it harder to establish who employed the Plaintiffs").  Settling Defendants do not refute (or even acknowledge) this record evidence in their opposition.  Nor do they acknowledge Plaintiffs' arguments that the complexity of this case derived not from the fact that Plaintiffs regularly worked more than 40 hours per week without receiving overtime

---

[2]     This figure represents the degree to which Plaintiffs' fees were adjusted as of August 12, 2024, the date Plaintiffs filed their Motion for Attorneys' Fees and Costs.  After adding the time Plaintiffs' counsel spent on this Reply and removing the four entries Plaintiffs concede herein, that reduction now represents 23.32 percent of Plaintiffs' total fees.

compensation and were paid nothing for weeks of work, but rather from the fact that Plaintiffs performed their work for Settling Defendants at 19 different job sites for a network of 11 different interrelated LLCs structured precisely to evade liability but legally constituting a single enterprise.  Settling Defendants' many unsupported assertions that the case was simple do not overcome the record evidence submitted by Plaintiffs, or Plaintiffs' arguments to the contrary.

> b. **Settling Defendants Misunderstand the *Johnson* Factor Assessing Degree of Success and Ask the Court to Apply an Impermissible "Proportionality" Analysis.**

Nowhere do Settling Defendants dispute that each of the Plaintiffs recovered more than 1.4 times the amount of the total unpaid wages Plaintiffs believe are due—an excellent result for Plaintiffs that more than made them whole.  *See* Pls. Br. at 4-5.  Instead—comparing the settlement sum designated for unpaid wages and damages ($18,000) with the attorneys' fees sought—Settling Defendants ask the Court to reduce Plaintiffs' fees by 25 percent due to their assessment of Plaintiffs' "degree of success."  Opp'n at 9-13.  Settling Defendants misunderstand the "degree of success" factor, which assesses what a plaintiff received in relation to what that plaintiff sought and has nothing to do with the amount of the award viewed in an abstract vacuum.  *See* Pls.' Br. at 5, 14-15 (citing cases).  An early settlement providing Plaintiffs with 1.4 times their total unpaid wages represents a high degree of success, particularly given the collectability concerns caused by the fact that many defendants were thinly capitalized LLCs.

Settling Defendants' reliance on *Hernandez v. Amber's Disposal, LLC*, No. CV CBD-18-1809, 2019 WL 330192 (D. Md. Jan. 25, 2019), is misplaced.  In *Hernandez,* the Court reviewed a joint motion to approve a settlement that included an agreement regarding the plaintiffs' fees, not a contested fee petition, and the Court approved the exact fee award requested by the parties.  *Id.* at 6.  Moreover, the degree of success in *Hernandez* was very different than that of Plaintiffs

here; there, the workers obtained just half of the unpaid wages they sought, 2019 WL 330192, at *3–6, while here, Plaintiffs' settlement provided them with all their wages owed plus a significant measure of liquidated damages they might have received had they continued through years of litigation and trial.[3]

Settling Defendants also assert that "the social value of the judgment is basically limited to the damages recovered." Opp'n at 10 (citing *Fowler v. Tenth Planet, Inc.*, No. 1:21-CV-02430-JRR, 2024 WL 3738347, at *12 (D. Md. Aug. 9, 2024)). Not so. The fact that Plaintiffs were able to obtain their full measure of unpaid wages plus a significant amount of damages despite Defendant Mokai's choice to structure his business as a convoluted network of interrelated LLCs adds to the social value of the case. Plaintiffs proved that such a structure is not an insurmountable obstacle to collecting unpaid wages and damages, setting out a road map for other victims of wage theft to follow and issuing a warning to developers with similar business structures.

---

[3]   Settling Defendants point to the *Hernandez* Court's remark, *in dicta*, that the ratio of fees to judgment requested by the motion before it was very different from the ratio in *Almendarez v. J.T.T. Enterprises Corp.*, "where the plaintiffs were awarded attorney's fees amounting more than 25 times the amount they recovered in damages after trial." *Id*. (citing *Almendarez v. J.T.T. Enters. Corp.*, No. JKS 06-68, 2010 WL 3385362, at *3 (D. Md. Aug. 25, 2010)). But for the reasons stated above and in Plaintiffs' opening brief, the degree of success factor examines what a plaintiff got in relation to what that plaintiff sought; neither federal nor Maryland state law permits a "proportionality" analysis that relies on a strict comparison of the amount recovered to the amount of fees sought. Indeed, the purpose of fee-shifting provisions in Maryland's wage laws is to provide "an incentive, based on a realistic expectation of reasonable compensation, for attorneys to agree to take on wage dispute cases, even where the dollar amount of the potential recovery may be relatively small." *Friolo v. Frankel*, 403 Md. 443, 457–58 (2008). Where, as here, the amount in controversy in a wage-and-hour suit is relatively low, limiting recoverable attorneys' fees to a proportion of the damages recovered would "clash with the public policy behind statutory fee-shifting provisions[.]" *Friolo v. Frankel*, 373 Md. 501, 528 (2003). Such a limit "would likely preclude individuals seeking to recover relatively small amounts from procuring the assistance of private counsel, other than on a *pro bono publico* basis, and thus would frustrate the very purpose of the statute." *Id.*

### c. Plaintiffs Have Not Billed for Duplication of Effort.

Settling Defendants' arguments concerning the number of lawyers who worked on this case are similarly unavailing. This case was initially assigned to Monisha Cherayil and Diana Jarek, both of whom left the Public Justice Center for alternative employment during the pendency of the case. *See* Rodwin Decl., ECF 57-4 at ¶¶ 5, 7. To account for changes in the case's staffing, Plaintiffs waived all time spent reviewing the case file—i.e., time arising from the change in staffing. And, although the Local Rules expressly permit compensation "for the attendance of more than one lawyer" at intraoffice meetings "held for the purpose of work organization, strategy, and delegation of tasks," L.R. App. B 2.d, Plaintiffs have already waived 50 percent of all time spent in internal meetings. In addition, as the more senior attorney on the case, Mr. Rodwin "limited [his] role to supervision and review of the other attorneys' work wherever possible." Rodwin Decl. ¶ 12. Finally, in accordance with L.R. App. B 2.d., Plaintiffs only billed for one PJC staff member's presence at meetings with clients and third parties, even if more than one attorney or paralegal was present. *See, e.g.*, Fee Detail, ECF 57-3, page 3, December 13, 2022, entry by Lee Woo Kee. It is likely a result of these proactive measures that Settling Defendants have not been able to point to any particular fee entry that represents "duplication of effort." Any further reduction—let alone the unprecedented reduction Settling Defendants seek of 50 percent of Mr. Rodwin's and Ms. Gellatly's hours—would be unnecessary and inappropriate. *See, e.g., Velasquez Flores v. Elite Com. Cleaning, LLC*, No. 8:20-CV-3600-AAQ, 2024 WL 916250, at *3, *7 (D. Md. Mar. 1, 2024) (striking duplicative entries relating to the same task but rejecting Defendant's invitation to apply a further across-the-board reduction when "Defendants do not identify any hours they believe to be duplicative or unrelated").

Instead of identifying any specific entries as "duplicative," Settling Defendants rely on tenuous comparisons, such as to a Minnesota case where two retail managers "retained seven lawyers from three different law firms located in four different cities," which that court described as a "vast overkill" of legal resources. *Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107 PJS/RLE, 2009 WL 2998163, *2 (D. Minn. Sept. 15, 2009). Needless to say, the staffing here is not remotely comparable to that in *Thompson*. Defendants also cite *Obifuele v. 1300 LLC*, 2006 U.S. Dist. LEXIS 60043 at *41 (D. Md. Aug. 23, 2006)[4] for the principle that "[a]n award of attorneys' fees may be reduced if an unnecessarily large number of attorneys work on the matter." There, though, the court did not reduce the requested fee award in the matter at hand. Instead, it found the case had been appropriately staffed with three attorneys and three support staff, all in the service of one litigant. *Id*. If anything, the cases Settling Defendants cite cast Plaintiffs' petition in a favorable light.

### V. The Time Sought on Plaintiffs' Motion for Fees and this Reply is Fully Compensable.

As set out in Plaintiffs' fee detail, Plaintiffs spent 17.8 hours on their Motion for Attorneys' Fees and Costs, with 8.7 of that by attorney Gellatly and 9.1 by attorney Rodwin. Plaintiffs waived half of the 2.4 hours spent on internal meetings relating to the work on this filing, and thus sought $4,747 in fees deriving from 16.6 hours of attorney time—almost exactly what this Court found appropriate in two recent decisions. *See Fowler*, 2024 WL 3738347, at *10 (awarding $4,762.50 for fee petition work); *Mancilla v. Chesapeake Outdoor Services, LLC*, No. 1:22-CV-00032-JMC, 2024 WL 2803947, at *11 (D. Md. May 31, 2024) (awarding $4,366.86 for fee petition work). No reduction of that sum is appropriate here.

---

4    Plaintiffs located this decision on Pacer because it does not appear to be on Westlaw.

Plaintiffs seek an additional $3,251.00 for 10.55 hours spent by Attorney Gellatly and 2.05 by Attorney Rodwin on this Reply. An exhibit setting out how this time was spent is attached. Ex. 1, Fee Detail.

## VI. Plaintiffs' Requested Costs Are Compensable.

Costs such as service of process are recoverable and are routinely awarded. *See, e.g.*, *Jackson v. Egira, LLC*, No. CV RDB-14-3114, 2016 WL 5815850, at *4 (D. Md. Oct. 5, 2016). Attorney Rodwin's declaration set out the basis for the $1,630 in costs deriving from the filing fee and service of process costs in this case. *See* Rodwin Decl. ¶ 15. Due to an oversight for which undersigned counsel apologizes, Plaintiffs did not attach the actual invoices from Same Day Process, Inc., the company that effectuated service, but do so here.[5] *See* Ex. 2, Paid Invoices from Same Day Process, Inc.

Settling Defendants object that "service should not have been that complicated" "given that the defendant entities were all associated with the individually named defendants." Opp'n at 15. This objection would carry more weight if Mr. Mokai, the individual defendant associated with the Infinite Homes LLCs, had been the resident agent of those entities. Unfortunately, making matters more complicated for Plaintiffs and ultimately more expensive for Settling Defendants, the 11 Infinite Homes LLCs had four different resident agents located across three Maryland counties. *See* Ex. 2, Paid Invoices from Same Day Process, Inc. None of these addresses was the same as Mr. Mokai's, for whom service was attempted in Brooklyn, New York before Mr. Mokai ultimately waived service on February 8, 2024. *See* ECF 13. While Eron Heath was the resident agent for E.S. Homes, LLC ("E.S. Homes"), service was not

---

[5] Settling Defendants' fear that Plaintiffs' use of same-day service "increased the cost exponentially" is misplaced; Plaintiffs did not pay for same-day service, they simply used a well-known company named "Same Day Process, Inc."

15

straightforward on him, either.  When the process servers attempted service at the address registered to E.S. Homes with the State of Maryland, they learned it was not Mr. Heath's home, but his mother's.  *See* Ex. 3, January 18, 2024 email from Same Day Process, Inc.  Plaintiffs then spent time identifying what they believed to be Mr. Heath's new residence, and the process servers ultimately tracked him down and served him there the following month.  ECF 14.

## VII.  Conclusion

Plaintiffs are entitled to recover the overwhelming majority of their claimed fees and costs.  Plaintiffs concede they incorrectly billed for four entries, which amount to a reduction in fees of $479.50.  If the Court believes any of Defendants' remaining objections have merit, they are more than accounted for in the 23.68 percent reduction Plaintiffs already made to their fees in the exercise of billing judgment.[6]  Plaintiffs thus respectfully request $47,517.33 in attorneys' fees—an updated total reflecting fees accrued on this Reply—and $1,630 in costs.

Dated:  September 26, 2024         Respectfully submitted,

                                    _____/s/_____
                                    Amy Gellatly (Fed. Bar No. 31177)
                                    David Rodwin (Fed. Bar No. 18615)
                                    Public Justice Center
                                    201 North Charles Street, Suite 1200
                                    Baltimore, MD 21201
                                    Tel: (410) 625-9409
                                    Fax: (410) 625-9423
                                    gellatlya@publicjustice.org
                                    rodwind@publicjustice.org

                                    *Attorneys for Plaintiffs*

---

[6]   After adding the time Plaintiffs' counsel spent on this reply and removing the four entries Plaintiffs concede herein, that reduction now represents 23.32 percent of Plaintiffs' total fees.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September 2024, I electronically filed with the Court the foregoing and attached documents and caused copies to be sent via first class mail, postage prepaid, to:

Greilyn Construction LLC
c/o Miriam Vasquez, Resident Agent
4909 Orville Ave.
Baltimore, MD 21205

Alfredo Sandoval
4909 Orville Ave.
Baltimore, MD 21205

                                                 /s/
                                            Amy Gellatly