## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSE ALFREDO AMAYA, *et al.*,** | * | |
| | * | |
| *Plaintiffs,* | * | |
| v. | * | Civil Case No: 1:24-cv-00031-SAG |
| **INFINITE HOMES GROUP 646/500 LLC, *et al.*,** | * | |
| | * | |
| *Defendants.* | | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## <u>MEMORANDUM OPINION</u>

On January 5, 2024, Plaintiffs Jose Alfredo Amaya, Luis Miranda, and Moises Aleman filed this wage and overtime lawsuit against (1) Infinite Homes Group 646/500 LLC, (2) Infinite Homes Group 218 LLC, (3) Infinite Homes Group 4108 LLC, (4) Infinite Homes Group 21AC LLC, (5) Infinite Homes Group 8N LLC, (6) Infinite Homes Group 21AA LLC, (7) Infinite Homes Group 21AD LLC, (8) Infinite Homes Group 21AE LLC, (9) Infinite Homes Group 21AHI LLC, (10) Infinite Homes Group 2601 LLC, (11) Infinite Homes Group 3629 LLC, (12) Greilyn Construction LLC, (13) E.S. Homes, LLC, (14) Shay Mokai, (15) Alfredo Sandoval, and (16) Eron Heath. Plaintiffs brought claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Labor & Empl. §§ 3-501 *et seq.*, the Maryland Workplace Fraud Act ("MWFA"), Md. Code Ann., Labor & Empl. §§ 3-901 *et seq.*, and Maryland common law. (ECF Nos. 1). Plaintiffs filed an

Amended Complaint on January 9, 2024. (ECF No. 6). The parties[1] reached a settlement agreement following a settlement conference before this Court on June 11, 2024, and submitted a Joint Motion for Settlement Approval on July 22, 2024. (ECF No. 54). Judge Gallagher granted the parties' Joint Motion for Settlement Approval the same day. (ECF No. 55). As part of the settlement the parties agreed that the undersigned would determine the issue of attorneys' fees and costs after briefing.  Presently pending before this Court is Plaintiffs' Motion for Attorneys' Fees and Costs. (ECF No. 57). The motion is fully briefed, (ECF Nos. 58, 59), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the following reasons, Plaintiff's motion will be GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND

As stated, Plaintiffs brought claims against sixteen Defendants, alleging violations under the FLSA, MWHL, MWPCL, MWFA, and Maryland common law. (ECF Nos. 1, 6). Specifically, Plaintiffs alleged they performed work on 19 residential properties in 2021 and 2022 belonging to:

> [A] network of 11 different LLCs affiliated with Mr. Mokai: Infinite Homes Group 646/500 LLC, Infinite Homes Group 218 LLC, Infinite Homes Group 4108 LLC, Infinite Homes Group 21AC LLC, Infinite Homes Group 8N LLC, Infinite Homes Group 21AA LLC, Infinite Homes Group 21AD LLC, Infinite Homes Group 21AE LLC, Infinite Homes Group 21AHI LLC, Infinite Homes Group 2601 LLC, [and] Infinite Homes Group 3629 LLC.

(ECF No. 57-1 at 3).[2] Plaintiffs contended that "Defendants misclassified Plaintiffs as independent contractors, failed to pay them anything at all for several weeks' work, and failed to pay them the required overtime rate for their many hours worked beyond 40 hours in a workweek." *Id.* at 4.

---

[1] As will be explained further, two of the named defendants failed to appear in this lawsuit, and the Clerk entered default against them. *See infra* Section II. The two defaulting defendants, Sandoval and Greilyn Construction, are not parties to the settlement agreement.

[2] When the Court cites to a particular page or range of pages, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document. Defendants' Opposition has no

Two Defendants, Alfredo Sandoval and Greilyn Construction, failed to appear, and the Clerk entered default against them. (ECF Nos. 34, 35). Plaintiffs and the remaining Defendants (Mokai, Infinite Homes, Heath, and E.S. Homes) participated in a settlement conference before this Court on July 11, 2024, where the parties agreed that Defendants would pay Plaintiffs $18,000. (ECF No. 57-1 at 4). The parties subsequently submitted a Joint Motion for approval of their settlement agreement, which was granted by Judge Gallagher on July 22, 2024. (ECF No. 55). Pursuant to Judge Gallagher's Order, Plaintiffs were permitted to file a motion for attorneys' fees and costs, which would be submitted to the undersigned for a final and binding determination. *Id.* Plaintiffs timely filed their motion for attorneys' fees on August 12, 2024, which is presently pending before this Court. (ECF No. 57).

## II.    DISCUSSION

Prevailing parties in an FLSA action are "entitled to an award of attorney's fees and costs that they establish as reasonable."[3]  *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 242 (4th Cir. 2010); *see also* 29 U.S.C. § 216(b).  "The amount of the attorney's fees, however, is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).  "To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs."  *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 22 (4th Cir. 2019).  The Court considers twelve factors, known as the "*Johnson* factors," in assessing the reasonableness of the requested fee:

---

electronic filing stamp, and so the page numbers referred to when citing to the Opposition are those located at the bottom of each page.

[3] The parties have agreed that Plaintiffs are to be deemed prevailing parties for the purposes of a fee determination. (ECF No. 57-1 at 5).

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). "While the *Johnson* factors assist a court in calculating a reasonable fee award, a district court need not 'consider *all* twelve *Johnson* factors.'" *Reyazuddin v. Montgomery Cnty., Md.*, No. CV DKC 11-951, 2022 WL 4608331, at *10 (D. Md. Sept. 30, 2022) (quoting *Martin v. Mecklenburg Cnty.*, 151 F. App'x 275, 283 (4th Cir. 2005)) (emphasis added); *Erny on behalf of India Globalization Cap., Inc. v. MuKunda*, No. CV DKC 18-3698, 2020 WL 3639978, at *4 (D. Md. July 6, 2020); *cf. Brooks v. Roberts*, 501 F. Supp. 3d 103, 112 (N.D.N.Y. 2020) ("However, the trial court need not robotically recite and make separate findings as to all twelve *Johnson* factors.") (quotation omitted). Maryland law further provides that prevailing plaintiffs in MWHL cases are entitled to reasonable attorney fees and that prevailing plaintiffs in MWPCL cases may be awarded reasonable counsel fees and costs. *See* Md. Code Ann., Lab. & Empl. §§ 3-427(d)(1)(iii), 3-507.2(b).

### 1. The Reasonableness of Plaintiff's Fee Petition — Lodestar Amount

"The first step in determining the reasonable attorney's fees is to calculate the lodestar— that is, the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Smith v. Touching Angels Healthcare, Inc.*, No. CV RDB-17-0673, 2018 WL 1035769, at *2 (D. Md. Feb. 23, 2018) (internal quotations omitted); *Randolph*, 780 F. App'x at 22.

#### a. Rates

Plaintiffs submit that the following hourly rates are reasonable for those involved in the prosecution of this case:

- Monisha Cherayil (attorney since 2008): $350/hour

- David Rodwin (attorney since 2012): $325/hour

- Amy Gellatly (attorney since 2014): $245/hour

- Diana Jarek (attorney since 2020): $165/hour

- Lee Woo Kee (paralegal since 2022): $125/hour

(ECF No. 57-1 at 11-12).

"To determine reasonable hourly rates, a court 'looks to the prevailing market rates in the relevant community.'" *Reyazuddin*, 2022 WL 4608331, at *11 (quoting *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 551 (2010)).  "While a court may rely on affidavits from local attorneys opining on the reasonableness of a plaintiff's requested rates, it may also take judicial notice of its own knowledge of the local legal market.  And in the District of Maryland, that market knowledge is embedded in . . . [the] Local Rules, Appendix B, which provides rates that vary based on an attorney's experience level." *Id.* (quotations and citations omitted); *see also Gonzalez v. Caron*, No. CIV.A. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).  While these "guidelines" are "not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzalez*, 2011 WL 3886979, at *2.  The Appendix B guidelines are as follows: $150-225 for lawyers admitted to the bar for less than five years; $165-300 for lawyers admitted for five to eight years; $225-350 for lawyers admitted for nine to fourteen years; $275-425 for lawyers admitted for fifteen to nineteen years; and $300-$475 for lawyers admitted for twenty years or more. The rate for paralegals and law clerks is $95-150.

Defendants do not contest the reasonableness of the above rates.  Each of the above rates are also presumptively reasonable under the Court's guidelines given each attorneys' years of experience and the hourly rate charged for paralegal services. Further, Plaintiffs have provided declarations by three attorneys attesting that the above rates are reasonable and are in fact lower than rates customarily charged by legal professionals for wage-and-hour cases in the Baltimore-Washington area. (ECF Nos. 57-5, 57-6, 57-7). The Court therefore concludes that these hourly rates are reasonable.

### b.  Hours Expended

"The party seeking fees must provide detailed records that specify the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged." *Guillen v. Armour Home Improvement, Inc.*, No. CV DLB-19-2317, 2024 WL 1346838, at *4 (D. Md. Mar. 29, 2024) (quotations omitted).  When it comes to compensable fees, "[T]he Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge." *Argonaut Ins. Co. v. Wolverine Const., Inc.*, 976 F. Supp. 646, 657 (D. Md. 2013).  Fee applicants nevertheless "bear the burden of providing sufficient detail in their records to explain and support their requests for fees and costs." *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012); *see also Almendarez v. J.T.T. Enters. Corp.*, No. CIV. JKS 06-68, 2010 WL 3385362, at *5 (D. Md. Aug. 25, 2010) ("The burden to show reasonableness rests on the fee applicant.").  Thus, "[w]hen the documentation of hours is vague or incomplete the district court may reduce the award accordingly." *Argonaut*, 976 F. Supp. 2d at 657.

Neither will the Court award non-compensable, excessive, or unreasonable fees.  *See Reyazuddin*, 2022 WL 4608331, at *14 ("To determine reasonable hours expended, a court must

'exclude from its . . . fee calculation' hours 'that are excessive, redundant, or otherwise unnecessary.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).   Regarding non-compensable work, "Clerical work is not billable to an adversary." *Castillo Pacheco v. Mezeh-St. Mary's LLC*, No. TDC-21-2521, 2023 WL 5411071, at *4 (D. Md. Aug. 22, 2023).   Non-compensable clerical tasks include, *"inter alia*, filing documents with the Court, organizing documents, or assembling binders." *Ramirez v. 316 Charles, LLC*, No. CV SAG-19-03252, 2021 WL 662185, at *3 (D. Md. Feb. 19, 2021); *see also Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929–30 (E.D. Va. 2015) (giving examples of non-compensable clerical work like "collating and filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings and preparing sets of orders, document organization, creating notebooks or files and updating attorneys' calendars, assembling binders, emailing documents or logistical telephone calls with the clerk's office"); *cf. PNC Bank, N.A. v. Starlight Props. & Holdings, LLC*, No. 6:13-CV-408-ORL, 2014 WL 2574040, at *12 (M.D. Fla. June 9, 2014) ("Work that is purely clerical in nature, such as preparing civil cover sheets or summonses, and the like, are not compensable hours.").

The Court will organize its analysis based on the litigation phases described in Plaintiff's fee itemization, as required under Appendix B of the Local Rules. These sections address several *Johnson* factors, including the time and labor expended, the novelty and difficulty of the questions raised, the skill required to properly perform the legal services rendered, the experience, reputation, and ability of the attorneys, and fee awards in comparable cases.

### 1. Case Development

Plaintiffs' counsel billed 64.9 compensable hours on case development, for a total of $10,847. (ECF No. 57-3 at 6). Prior to filing the instant motion, Plaintiffs' counsel removed time

entries which they deemed excessive or potentially duplicative, including by reducing all time spent in internal meetings by 50% and excising entries related to the defaulting Defendants and potential plaintiffs who did not join the case. (ECF No. 57-1 at 8). Through this process, Plaintiffs' counsel reduced the hours spent on case development to 52.2 hours, for a total of $8,505.50. (ECF No. 57-3 at 6).[4] Defendants identify several entries which they argue are duplicative or clerical in nature and should be excluded. (ECF No. 58 at 5). Defendants further contend that several entries, one of which is in the category of case development, should be stricken as "vague entries that do not appear to have any connection to this case." *Id.* at 6.[5] Of the contested case development entries, Plaintiffs concede that two should not have been included in their petition. (ECF No. 59 at 6). The Court has additionally identified one entry which should be classified as clerical and is non-compensable. The following entries will therefore be stricken:

| Date | Timekeeper | Work | Hourly Rate | Time |
|------|-----------|------|-------------|------|
| 12/12/2022 | Lee Woo Kee | EWK downloaded client documents and organized vdrive folder | $125 | 1 |
| 5/7/2022 | Amy Gellatly | Enter notes from call with opposing counsel | $245 | .1 |

---

[4] While 52.2 hours for case development is high, the Court notes that over 40 over these hours are billed by a paralegal at a rate of only $125 per hour. The Court is also cognizant of the logistical and legal complexities involved in a case with sixteen named defendants, three plaintiffs, and nineteen worksites. As explained in Attorney Rodwin's declaration, the PJC spent "more time than usual in arranging for proper service of Plaintiffs' Complaint, researching registered agents and service addresses for 16 defendants and communicating regularly with Plaintiffs' process servers as they made multiple attempts to serve the 13 LLC Defendants and individual Defendants[.]" (ECF No. 57-4 at 6). Attorney Sally J. Abrahamson at least partially attributes Plaintiffs' eventual success to the fact that they were able to name and serve all relevant Defendants (ECF No. 57-5 at 4).

[5] This Court believes that the entry identified by Defendants as vague in the case development category is sufficiently detailed such that the Court may "understand the nature of the costs or why they should be granted." *See Aerotek*, 852 F. Supp. 2d at 645; *see also Melgar v. CCC USA LLC*, No. DLB-22-0283, 2023 WL 6381438, at *2 (D. Md. Sept. 29, 2023 ("The party seeking fees 'must provide detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged[.]'" (citations omitted)).

| 7/15/2022 | Amy Gellatly | File my notice of appearance | $245 | .1 |
| --- | --- | --- | --- | --- |

Several entries involve both clerical and substantive work. In such circumstances, "it is appropriate to reduce the billed hours by .1." *Carranza v. Ramirez*, No. PWG 20-cv-2687, 2022 WL 4080310, at *3 (D. Md. Sept. 6, 2022) (citing *Ramirez v. 316 Charles, LCC*, No. SAG-19-03252, 2021 WL 662185, at *3 (D. Md. Feb. 19, 2021)); *see also Spriggs v. Merling*, No. 1:20-cv-3395-JMC, 2023 WL 1801968, at *2 (D. Md. Feb. 7, 2023) ("If a time entry contains both substantive and clerical work, the Court will reduce the billed hours by .10."). As discussed, clerical tasks include uploading and organizing files, as well as sending correspondence and documents. *Butler v. PP&G, Inc.*, No. 20-3084-JRR, 2023 WL 6517593, at *4 (D. Md. Oct. 5, 2023) ("[A]ny time spent by attorneys, paralegals, or law clerks on clerical tasks such as uploading filed to databases or emailing documents must also be discounted.") (citations omitted). The following entries consist of both clerical and substantive work:

| Date | Timekeeper | Work | Hourly Rate | Time |
| --- | --- | --- | --- | --- |
| 2/22/2023 | Lee Woo Kee | EWK and MC spoke w LM and discussed terms of retainer. EWK resent client retainer to LM. | $125 | .8 |
| 5/3/2023 | Lee Woo Kee | EWK texted Moises Aleman to check in about signing retainer. EWK forwarded Aleman's response to MC. | $125 | .2 |

| 6/27/2023 | Lee Woo Kee | EWK uploaded client docs to vdrive and is working on updating the damages spreadsheet | $125 | .7 |
| 5/6/2023 | Amy Gellatly | Translated notes from call and uploaded to case mgmt system[6] | $245 | .2 |

The undersigned is not persuaded that the remaining case development entries which Defendants seek to have stricken are clerical. Accordingly, the above-listed clerical entries will be stricken, and the mixed entries will be reduced by .1 hours. The case development fee award will be reduced to $8,269.50.

2.   Pleadings

Plaintiffs' counsel billed 32.8 hours on pleadings for a total of $7,464.50. (ECF No. 57-3 at 9). This total was voluntarily reduced by Plaintiffs to 22.05 hours and $4,450.50 by waiving entries deemed duplicative or excessive, and reducing time spent on meetings by 50%.   *Id.* Defendants challenge two entries within this category on the grounds that they are vague. (ECF No. 58 at 6). Plaintiffs dispute the characterization of these entries as vague, but nonetheless concede that they should be stricken because they relate to filing pleadings, which is an administrative task. (ECF No. 59 at 8). This Court agrees. The following two entries should be removed from the pleadings total:

| **Date** | **Timekeeper** | **Work** | **Hourly Rate** | **Time** |
| | | | | |

---

[6] While the time spent on translation is compensable, uploading the notes to the case management system is not. See *Melgar*, 2023 WL 6381438, at *2 (awarding time spent on translation for clients in FLSA fees case).

| 1/5/2024 | Diana Jarek | File Document in Court[7] | $165 | 1.4 |
| 1/9/2023 | Diana Jarek | Review 1st Amended Complaint and file | $165 | .6 |

The compensable hours for pleadings will therefore be reduced to 20.05 hours, totaling $4,120.50.

3.   Discovery

The parties did not engage in formal discovery in this matter, and Plaintiff's counsel billed only .8 discovery hours, totaling $260. (ECF No. 57-3 at 9). Plaintiffs waive two of the discovery entries and consequently seek compensation for .3 billable hours, totaling $97.50. *Id.* Defendants dispute one of these entries, requesting Attorney Rodwin's April 16, 2024, entry of .1 hours be stricken because it relates to an email proposing a plan for modifying the scheduling order and a show cause order for default. (ECF No. 58 at 6). Defendants contend that because Plaintiffs represent that they have voluntarily excised entries related to the defaulting Defendants, the entry is improper. *Id.* However, in the context of an email written within six minutes, the Court agrees with Plaintiffs that it is impracticable to proportionally reduce Attorney Rodwin's billing for the time spent addressing the issue of default, rather than the show cause order. The Court therefore does not deduct any hours from this category.

4.   Motions Practice

Plaintiffs' counsel billed 75.6 hours for motions practice, totaling $20,214. (ECF No. 57-3 at 17). Plaintiffs have reduced this total to 51.7833 hours and seek $13,931.58 in compensable billing hours. *Id.* Much of this time was spent drafting Plaintiffs' Motion for Conditional

---

[7] Defendants object to this entry as vague because the invoice describes the "activity detail" as "N/A." (ECF No. 58 at 7). However, the Court believes that the "activity type" of "file document in court" provides sufficient detail to inform the reader of the nature of the costs.

Certification: Plaintiffs' counsel cumulatively billed 38.6 hours for this Motion alone, totaling $10,265 and accounting for over 50% of Plaintiffs' motions practice in this case. *Id.* Due to the fact that most of the work on the Motion was done by Attorney Gellatly who "was new to the Public Justice Center (PJC) and to FLSA practice[,]" Plaintiffs' counsel cut one third of the time spent on the Motion, reducing fees by $3,421.57. (ECF No. 57-1 at 8).

Defendants argue that because the Motion for Conditional Certification was denied as moot following the parties' settlement, (ECF No. 56), the motion was unsuccessful and therefore, "any time associated with the collective action aspect of the litigation, including time spent on Plaintiffs' motion for class certification is not chargeable to Defendants." (ECF No. 58 at 8). Based on the purported failure of Plaintiffs to obtain conditional certification, Defendants advocate that all 38.6 hours be removed. *Id.* Plaintiffs take issue with Defendants' characterization of the motion for class certification as "unsuccessful" because it was never decided on its merits. (ECF No. 59 at 3). They further contend that the motion "was necessary both for Plaintiffs' settlement leverage and to preserve the putative collective members' rights." *Id.* at 4.

The Court is not persuaded by Defendants' arguments. Both cases Defendants cite in support of their position are factually distinguishable from the instant matter: in *Lorenzo v. Prime Communications, L.P.*, conditional certification was granted for some FLSA claims, but denied for others, and the court deducted "work performed in connection with the FLSA claims for which conditional certification was denied." No. 5:12-CV-69-H-KS, 2018 WL 10689708, at *8 (E.D.N.C. Sept. 28, 2018). The plaintiffs' motion for conditional certification was denied in *Pelczynski v. Orange Lake Country Club, Inc.*, after "reviewing the parties' arguments, allegations, and supporting affidavits[.]" 284 F.R.D. 364, 369 (D.S.C. 2012). In neither case was the motion for conditional certification denied as moot, as it was here. Further, even if the motion is framed

12

as "unsuccessful," even an unsuccessful but "necessary step to ultimate victory" may entitle a party to attorneys' fees. *Imgarten v. Bellhop Corp.*, 383 F. Supp. 2d 825, 839-40 (D. Md. 2005) ("[P]laintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit.") (quoting *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991)). The Court does not believe that the motion for conditional certification is entirely unrelated to Plaintiffs' ultimate success—it is possible, for example, that the motion was a contributing factor in the parties' settlement. The Court therefore declines to deduct the full cost of drafting the motion from Plaintiffs' counsel's fees.[8] Any concern that the Court may have had about the possible excessiveness of billing 38.6 hours on the motion has been allayed by Plaintiffs' counsel voluntarily waiving one third of these hours. (ECF No. 57-3 at 24).

The only other objection Defendants raise regarding motions practice billing is Attorney Cherayil's charge of .8 hours for drafting an internal strategy email on April 17, 2024. (ECF No. 58 at 7). Defendants requests a reduction because part of the email relates to the defaulting parties. *Id.* Given that the subject of the defaulting parties was just one of four topics addressed in the email, the Court will not deduct time from the entry. *Id.* (citing to the relevant entry as involving "strategy re defaulting parties, early mediation, proposed changes to scheduling order, [and] proposed deposition hours[.]"). It is simply not feasible to retroactively allocate a percentage of time spent on one topic within a lengthy strategy email, particularly if those topics are interconnected, as Plaintiffs represent. (ECF No. 59 at 8 (explaining the email was "time spent

---

[8] The Court also rejects Defendants' argument Plaintiffs' counsel "incurred unnecessary fees" by drafting the Motion for Conditional Certification because Defendants were willing to enter into a tolling agreement which "would have obviated the need for this work[.]" (ECF No. 58 at 8 n.5). The Court has reviewed the parties' email correspondence and it is apparent that counsel could not reach an agreement because Defendants would only consent to a private tolling agreement. (ECF No. 57-8 at 2). Plaintiffs' counsel's refusal to enter into a private agreement will not be held against them.

determining and communicating strategy pertaining to various interconnected components in this case.")). No hours will be deducted from this category.

5.   ADR

Plaintiffs' counsel billed 50.8 hours on ADR, totaling $14,758. (ECF No. 57-3 at 22). As with the prior categories, Plaintiffs' counsel has waived a number of entries and ultimately seeks compensation for 44.35 hours, totaling $13,013.75. *Id.* Defendants dispute three entries which they assert are clerical in nature. (ECF No. 58 at 14). The Court agrees that two of the three entries are clerical, and will deduct the following entries from the total attorneys' fees award:

| Date | Timekeeper | Work | Hourly Rate | Time |
|------|------------|------|-------------|------|
| 5/23/2024 | Amy Gellatly | Organize and enter notes from client meeting | $165 | .5 |
| 6/10/2024 | Amy Gellatly | Call 3 clients to remind abt [sic] tomorrow's settlement conf. | $165 | .1 |

Accordingly, the compensable fees in this category will be reduced to $12,914.75.

6.   Fee Petition Preparation

Plaintiff's counsel billed 17.8 hours in connection with the present fee petition for a total of $5,089.   (ECF No. 57-3 at 24).   Counsel voluntarily reduced entries in this category, and consequently seek 16.6 hours in compensable time for the fee petition, totaling $4,747. *Id.* Plaintiffs additionally spent 12.06 hours preparing the reply to Defendants' Opposition to the fee petition for a total of $3,251. (ECF No. 59-1 at 2).

"A district court may award the prevailing party 'fees on fees': 'fees incurred in litigating the question of fees.'"  *Guillen*, 2024 WL 1346838, at *13 (quoting *Mercer v. Duke Univ.*, 401

F.3d 199, 202 n.3 (4th Cir. 2005)).   "Nevertheless, it is within the district court's 'discretion to determine exactly what amount would compensate the party sufficiently for the time spent on the fees phase of a lawsuit,' including by reducing the award to eliminate time spent unreasonably." *Id.* (quoting *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995)). Defendants contend that the time spent on the petition on reply was excessive based on the experience of Plaintiffs' attorneys in wage-and-hour litigation, and argue that Plaintiffs are entitled to recover only five hours billed at Attorney Rodwin's rate (totaling $1,625). (ECF No. 58 at 15). The Court does not agree. Although the applicable law may not be particularly novel, Plaintiffs' counsel thoroughly argues each of the *Johnson* factors as applicable to the specific facts of their case. 16.6 hours is a reasonable amount of time to prepare a motion of this type and length, and award of $4,747 is consistent with past decisions by this Court. *Compare Fowler v. Tenth Planet, Inc.*, No. 1:21-CV-02430-JRR, 2024 WL 3738347, at *10 (D. Md. Aug. 9, 2024) (holding that 20 hours spent on a fee petition is excessive and reducing the award to $4,762.50); *Mancilla v. Chesapeake Outdoor Servs.*, No. 1:22-CV-00032, 2024 WL 2803947, at *11 (D. Md. May 31, 2024) (reducing award from $5,822.50 to $4,366.86 for fee petition).[9] The undersigned further notes that at least four of these hours were spent reviewing and excising duplicative or otherwise non-compensable time entries, resulting in an overall reduction of approximately 23% of Plaintiffs' attorneys' fees. (ECF Nos. 57-3 at 22-23, 59 at 16). This exercise in billing judgement undoubtedly narrowed the scope of potential disputes between the parties, saving counsel for Plaintiffs and Defendants time and money.

---

[9] In *Mancilla*, this Court held that 13.7 hours was excessive in a case where counsel had "decades of experience in handling similar matters." 2024 WL 2803947 at *11. In the present case, as acknowledged in Plaintiff's petition, Attorney Gellatly is new to FLSA practice. (ECF 57-1 at 8). Although Plaintiffs' counsel billed more hours than the *Mancilla* attorneys, Attorney Gellatly's hourly rate of $165 is substantially lower. *Compare id.* at *5 (finding hourly rates between $325 and $425 reasonable). This accounts for any perceived discrepancy between *Mancilla* and the instant case: the number of hours may be higher, but the award itself is comparable.

The undersigned has reviewed the fees sought in drafting the reply and also believes they are reasonable. (ECF No. 59-2 at 2) The award sought for preparing the fee petition and corresponding reply will therefore not be reduced.

c.   Lodestar Total

Having reviewed Plaintiffs' fees and Defendants' objections in light of the *Johnson* factors, the undersigned concludes that the total lodestar amount should be adjusted as follows:

| Fee Category | Total Fee[10] | Reduction(s) | Fee Awarded |
|---|---|---|---|
| Case Development | $8,505.50 | Non-compensables | $8,269.50 |
| Pleadings | $4,450.50 | Non-compensables | $4,120.50 |
| Discovery | $97.50 | None | $97.50 |
| Motions Practice | $13,931.58 | None | $13,931.58 |
| ADR | $13,013.75 | Non-compensables | $12,914.75 |
| Fee Petition & Reply | $7,998 | None | $7,998 |
| **Total Lodestar Amount** | | | **$47,331.83** |

2.   *The Reasonableness of Plaintiff's Fee — Claim Reduction(s)*

The next step in computing Plaintiff's award of attorney fees is to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88. Defendants do not contend that Plaintiffs seek an award for unsuccessful claims, and no reduction on this basis is necessary.

3.   *The Reasonableness of Plaintiff's Fee — Degree of Success*

---

[10] The "total fee" is based on the amount of compensable hours and charges as listed in Plaintiffs itemization, including reductions for hours voluntarily waived by Plaintiffs' counsel in their fee detail. (ECF No. 57-3).

"Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009)).  "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006).  "While quantifying success is 'challenging,' courts nonetheless '*must* compare the amount of damages sought to the amount awarded.'" *Fiallos v. Hamzah Slaughter House, LLC*, No. 1:20-CV-03577-JMC, 2022 WL 16923859, at *4 (D. Md. Nov. 14, 2022) (quoting *Randolph*, 780 F. App'x at 23) (emphasis supplied in *Randolph*).

Defendants ask that this Court impose a 25% across-the-board reduction of the fee award due to Plaintiffs "limited success" as well as a 50% reduction for all hours billed by Attorneys Rodwin and Gellatly due to excessive hours and overstaffing. (ECF No. 58 at 9-11). Addressing the 25% across-the-board reduction first, Defendants assert that this downward adjustment is appropriate because "the settlement is only a fraction of what Plaintiffs sought or could be entitled to under the law." (ECF No. 58 at 9). Defendants further argue that in FLSA cases which settle early in the litigation process, "the amount of fees awarded pale in comparison to the fees that Plaintiffs' Counsel is requesting." *Id.* at 13.[11] In support of their position, Defendants cite several opinions comparing the attorneys' fees award to the plaintiffs' recovery. *Id.* (citing *Navarro v. Eternal Trendz Customs, LLC*, No. TDC-14-2876, 2015 WL 898196, at *4 (D. Md. Mar. 2, 2015) (approving settlement which included attorneys' fees and costs of $3,545.20 where plaintiffs were awarded nearly $5,600); *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 412-13 (D. Md. 2014) (approving settlement agreement including $3,000 for attorneys' fees and costs, where plaintiff

---

[11] Defendants also argue that the 7-month length of the litigation suggests a reduced attorneys' fees award. (ECF No. 58 at 9). While 7 months passed between the filing of Plaintiffs' complaint in January 2024 and the parties' settlement approval in July, Plaintiffs' counsel began working on this case in July 2022. (ECF No. 57-3 at 2).

was awarded $4,500)).[12] Plaintiffs counter that Defendants misunderstand the "degree of success" factor, and that comparison of the settlement award and attorneys' fees improperly applies a proportionality analysis. (ECF NO. 59 at 11).

As previously stated, when examining the degree of success, courts compare the damages sought to the amount awarded. *Fiallos*, 2022 WL 16923859, at *4 (quoting *Randolph*, 780 F. App'x at 23). It is true that in *City of Riverside v. Rivera*, the Supreme Court of the United States "reject[ed] the proposition that fee awards … should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." 477 U.S. 561, 574 (1986). However, as the Fourth Circuit has clarified, *City of Riverside* "did not impose a blanket prohibition on the use of the rule of proportionality." *Jackson*, 391 F. App'x at 244. Although plaintiffs in civil rights cases "seek [] to vindicate important civil and constitutional rights that cannot be values solely in monetary terms" it is nevertheless the case that "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded[.]" *Id.* (quoting *City of Riverside*, 477 U.S. at 574-76).

The settlement sum in the instant case is $18,000. (ECF No. 59 at 11). As Plaintiffs point out, this is "more than 1.4 times the amount of the total unpaid wages Plaintiffs believe are due[.]" *Id.* It is also less than what Plaintiffs sought in their amended complaint—Plaintiffs did not state a dollar amount for their unpaid wages, but did request "an additional equal amount as liquidated damages[,]" double damages under the MWPCL, and treble damages under the MFWA (ECF No. 6 at 19-21). While Plaintiffs did not achieve full recovery for all their claimed damages, they did obtain the full amount of their unpaid wages as well as an additional sum in damages. This

---

[12] The Court notes that in *Duprey*, Judge Grimm explains that the $3,000 attorneys' fee award represents a compromise; reasonable fees could have been as high as $7,655. 30 F. Supp. 3d at 412. Additionally, the cases Defendants cite involve the approval of a fee award within a settlement agreement, rather than a contested fee petition. *Id.*

undoubtedly constitutes a substantial amount of the claimed damages, and the undersigned is reluctant to characterize a settlement of this nature as anything other than a success. As this Court previously explained in similar circumstances:

> [W]hen a case ultimately resolves by way of settlement, it is inappropriate for a court to simply compare the damages set forth in the complaint with the amount of the settlement.  If a plaintiff alleges a $100,000.00 loss in his or her complaint, fairly estimates a 50% risk of loss at trial, and settles the claim pre-discovery for $50,000.00, it is difficult to overly criticize the settlement based on the fact that it was for an amount less than the complaint's *ad damnum*. Thus, if a plaintiff in such a situation today can achieve a settlement amount that in good faith reasonably estimates the risk of loss and the value of being paid today rather than at the time of any verdict, it is difficult for the Court to regard such a result as significantly unsuccessful.  This is especially true in an FLSA case where the parties—and, ultimately, the Court itself—agreed that the settlement amount represented a reasonable compromise of disputed claims.

*Amaya v. Power Design, Inc.*, No. CV 14-00446-JMC, 2018 WL 690838, at *5 (D. Md. Feb. 2, 2018). The Court is also not persuaded by Defendants' proportionality concerns, as the lodestar figure is only slightly more than 2.5 times the settlement sum. *Compare City of Riverside*, 477 U.S. at 565-67 (affirming attorneys' fee award slightly in excess of seven times the plaintiff's compensatory and punitive damages); *McAfee*, 738 F.3d at 94 (reducing attorneys' fee award where it was more than 100 times the verdict *and* court found a lack of litigation success).[13]

Turning to Defendants' position that the case was overstaffed and the hours for Attorneys Rodwin and Gellatly should be cut by 50%, Defendants fail to identify any specific billing entries as duplicative. (ECF No. 58 at 10-11). Nor do they cite any authority supporting a 50% reduction of this kind. They instead generally contend that staffing the case with four attorneys is excessive and necessarily results in duplication of efforts. *Id.* This conclusion overlooks the fact that Attorneys Jarek and Cherayil, originally the primary attorneys for this matter, left the employment

---

[13] Disproportionality between a fee award and a settlement sum, absent a lack of success, cannot justify a reduction in fees. *See McAfee*, 738 F.3d at 94.

of PJC in 2024, at which time Attorneys Rodwin and Gellatly became the primary attorneys for Plaintiffs. (ECF No. 57-4 at 6). Plaintiffs' counsel preemptively address the issue of excessive billing caused by the change in staffing by waiving all time spent reviewing the case file. *See, e.g., id.* at 5 (waiving 3.5 hours of time billed for Attorney Gellatly's review of case history and the case file). There is no indication that a 50% reduction of fees billed by Attorneys Rodwin and Gellatly is appropriate.

Generally speaking, Plaintiffs' counsel exercised substantial billing judgment and good faith by voluntarily waiving a significant proportion of the fees in this case. Prior to filing their petition:

> [T]hey waived all time spent (1) reviewing the case file, (2) interviewing potential plaintiffs who did not joint the case, (3) researching the basis for and drafting an amended complaint that would have named an additional defendant, and (4) pursuing entry of a default and default judgment against [defaulting defendants].

(ECF No. 57-1 at 8). Plaintiffs' counsel further cut fifty percent of all time spent in internal meetings, a greater reduction than necessary under Appendix B of the Local Rules which permits charging the rate of the more senior lawyer. Loc. R. App. B 2.d (D. Md. 2023). Additionally, as already discussed, Plaintiff's counsel cut one third of the time spent drafting the Motion for Conditional Certification due to Attorney Gellatly's relative inexperience in FLSA practice. (ECF No. 57-1 at 8). These reductions resulted in a waiver of over 23% of Plaintiffs' counsel's total fees. In light of the foregoing, the Court finds no persuasive reason to apply an across-the-board reduction to the lodestar figure, and Plaintiffs will be awarded the full $47,331.83 for attorneys' fees.

### 4. Costs

Plaintiffs' counsel also requests $1,630 in costs related to this action. (ECF No. 57-4 at 8). The FLSA and its Maryland state counterparts provide that prevailing parties in wage and hour

cases may recover reasonable costs incurred from pursuing claims thereunder.  *See* 29 U.S.C. §

216(b); Md. Code Ann., Lab. & Empl. §§ 3-427(d)(1)(iii), 3-507.2(b).  Local Rule 109.1 further

provides that:

> In any case where any costs other than the fee for filing the action are being
> requested, the bill of costs shall be supported by affidavit and accompanied by a
> memorandum setting forth the grounds and authorities supporting the request.  Any
> vouchers or bills supporting the cost being requested shall be attached as exhibits.
>
> A party objecting to any requested costs shall submit a memorandum in opposition
> to the request within the time permitted by L.R. 105.2.  If no such memorandum is
> filed within the required time, the Clerk may, without notice or hearing, tax all of
> the requested costs.

Loc. R. 109.1(b)–(c) (D. Md. 2023).  "The Court has the same discretion over an award of costs

as it has over an award of fees."  *Guillen*, 2024 WL 1346838, at *23 (citing *Roy v. Cnty. of

Lexington, S.C.*, 141 F.3d 533, 549 (4th Cir. 1998)).  "The costs that may be charged to losing

defendants include 'those reasonable out-of-pocket expenses incurred by the attorney which are

normally charged to a fee-paying client, in the course of providing legal services.'"  *Almendarez*,

2010 WL 3385362, at *7 (quoting *Spell*, 852 F.2d at 771).

Plaintiffs' counsel attests that the costs incurred result from filing and service fees and

acknowledge that "[s]ervice fees were higher than usual because of the number of defendants and

the fact that Mr. Mokai does not live in Maryland." (ECF No. 57-4). Plaintiffs' counsel

inadvertently neglected to include the service invoices with the initial fee petition, but attached

them to the Reply. (ECF No. 59). Defendants did not have the benefit of the reviewing the invoices

prior to the filing their Opposition but assert that the claimed service costs are "specious given that

the defendant entities were all associated with the individually named defendants, and thus, service

should not have been that complicated." (ECF No. 58 at 15).  The Court has reviewed the invoices

and finds the service fees to be a reasonable expense: it is clear from the volume of invoices and

multitude of addresses listed therein that service was quite complicated.[14] However, the Court will deduct the fees for serving the two defaulting defendants, who are not party to the settlement agreement. (ECF No. 59 at 4, 15). Accordingly, Plaintiffs are entitled to recover $1,502.50 in costs.

## I.      CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 57) is GRANTED IN PART and DENIED IN PART.  A separate Order follows.


Date: <u>October 24, 2024</u>                                         <u>          /s/          </u>
                                                                                      J. Mark Coulson
                                                                                      United States Magistrate Judge

---

[14] The Infinite Homes entities alone had registered agents in three different Maryland counties. (ECF No. 59-2).